**Nathan GARDELS, Plaintiff,**

**v.**

**CENTRAL INTELLIGENCE AGENCY, Defendant.**

**Civ. A. No. 78–330.**

United States District Court, District of Columbia.

Jan. 4, 1980.

Mark H. Lynch, Washington, D.C., for plaintiff.

Daniel J. Metcalfe, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on defendant's motion for summary judgment. Plaintiff Nathan Gardels brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, for release of any documents relating to CIA contacts with the University of California. The CIA has refused to either deny or confirm the existence of documents concerning covert CIA activity at the eleven campuses and branches of that educational system, alleging that release of such information would result in the unauthorized disclosure of intelligence sources and methods and that such disclosure is prohibited by exemption 3 of the FOIA. Upon consideration of the parties' submissions in support of their respective positions and the entire record herein, the Court concludes that there is no genuine issue of material fact, and that the defendant CIA is entitled to judgment as a matter of law.

### I.

Nathan Gardels wrote a letter on May 26, 1976, seeking release from the CIA of "all past and present contractual arrangements or agreements and personal relationships between the CIA and the University of California." The CIA by letter of August 3, 1976, indicated that to process his request would require over 400 man-hours and cost over three thousand dollars. Gardels' counsel narrowed the request on December 15, 1976, to include only documents retrievable from five named CIA divisions [1] and those collected by the CIA for use by either the Select Senate Committee to Study Governmental Operations with respect to Intelligence Activities or the House Select Committee on Intelligence.

In response, the CIA gave documents to Gardels on four occasions. On July 11, 1977, the CIA released three documents without deletions and 155 documents with deletions. On November 2, 1977, the CIA

1. The named divisions were those of Domestic Collection, Foreign Resources, International Organizations; the Directorate of Operations; and the Office of Personnel.

released 18 documents without deletions, 21 documents with deletions, and a list of 12 other documents withheld in their entirety. The letter of November 2 also informed Gardels that the CIA would not release "(a)ny additional records, if they exist, which would be responsive to your request and which reveal any covert CIA connection with or interest in matters relating to those set forth in your request, and, indeed, any data that might reveal the existence of any such additional records." On September 21, 1977, and May 30, 1978, the CIA released additional documents to Gardels pursuant to his FOIA request, but they are not at issue in this lawsuit.

The CIA did not respond to Gardels' administrative appeals. Gardels filed a complaint in this Court on February 28, 1978, to compel the CIA to confirm or deny the existence of all documents responsive to his request and to obtain access to all documents withheld in whole or in part.

## II.

### A.

■ The third exemption to the Freedom of Information Act sanctions the nondisclosure of matters which are

specifically exempted from disclosure by statute (other than 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3), *as amended* by Public Law 94–409, 90 Stat. 1247 (1976). The CIA relies on Section 102(d)(3) of the National Security Act of 1947, as amended, and on Section 7 of the Central Intelligence Agency Act of 1949 in refusing to confirm or deny whether additional documents responsive to Gardels' request exist. Section 102(d)(3) of the National Security Act of 1947, as amended, provides in relevant part that "the Director of Central Intelligence shall be responsible for protecting intelli-

gence sources and methods from unauthorized disclosure." 50 U.S.C. § 403(d)(3). In 1949, Congress extended this prohibition of disclosure to the organization and function of the CIA by declaring in Section 7 of the Central Intelligence Agency Act

In the interests of the security of the foreign intelligence activities of the United States and in order [to] further implement the proviso of section 403(d)(3) of this title that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from the provisions of section 654 of Title 5, and the provisions of any other law which requires the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.

50 U.S.C. § 403g. These statutes are within the scope of exemption 3 of the Freedom of Information Act. *Goland v. Central Intelligence Agency*, 197 U.S.App.D.C. 25, 607 F.2d 339 (D.C. Cir. 1978).

### B.

■ The issue in this case is whether the disclosure of the requested information lies within the scope of Sections 403(d)(3) and 403g. The CIA asserts that confirming or denying the existence of covert CIA contacts at a particular university or college would lead to efforts to expose and terminate confidential CIA intelligence sources and methods. It relies primarily on the affidavits of John F. Blake, Chairman of the Information Review Committee and Deputy Director for Administration of the CIA, and of Michel Oksenberg, staff member of the National Security Council and professor of political science at the University of Michigan, on leave.

Mr. Blake states in his affidavit

If we (the CIA) adopt the practice of publicly disclosing our campus contacts we must surely anticipate active and abrasive campaigns to discover and expose the individuals concerned on at least some of the campuses on which our re-

plies are affirmative . . .. To deny the existence of CIA confidential contacts at a particular college or university could through FOIA requests by the plaintiff or others result in the ultimate identification, by a process of elimination, of those colleges or universities where CIA has confidential contacts.

Blake Affidavit at ¶ 9 and ¶ 12. Professor Oksenberg declares that "even the disclosure of the fact that such associations (with the CIA) exist at a particular university would lead ultimately to strong pressure to identify the academics involved." Oksenberg Affidavit at ¶ 7.[2] Professor Richard Abrams' assertion in his affidavit for the plaintiff that disclosure "would not inevitably result in the identification of the source" does not refute the CIA's submissions, because the question is not one of inevitability or certainty, but whether it is undisputed that to confirm or deny can reasonably be expected to lead to exposure. *See Phillipi v. Central Intelligence Agency*, 178 U.S.App.D.C. 243, 249 n.14, 546 F.2d 1009 at 1015, n.14 (D.C. Cir. 1976); *National Commission on Law Enforcement and Social Justice v. Central Intelligence Agency*, 576 F.2d 1373, 1377 (9th Cir. 1978).

### C.

▮▮ Section 552(a)(4)(B) of the FOIA mandates *de novo* review of agency determinations by the courts, with the burden on the agency to sustain its action. The courts must "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Ray v. Turner*, 190 U.S.App.D.C. 290, 297, 587 F.2d 1187, 1194 (D.C. Cir. 1978), *citing* S.Rep. No. 93–1200, 93d Cong., 2d Sess. 12 (1974). The *Ray* court noted that although the "substantial weight" criterion was developed for exemption 1, it also applies to exemption 3 "when the statute providing criteria for withholding is in furtherance of national security interests." *Ibid.* 190 U.S. App.D.C. at 298, 589 F.2d at 1195. The

Court concludes that the statutes at issue here, 50 U.S.C. §§ 401(d)(3) and 401(g), further national security interests within the meaning of *Ray*. Applying the "substantial weight" standard enunciated in *Ray*, defendant's affidavits demonstrate that to confirm or deny the existence of the documents at issue can reasonably be expected to result in the disclosure of intelligence sources and methods. *See Phillipi v. Central Intelligence Agency, supra*, 178 U.S. App.D.C. at 249 n.14, 546 F.2d at 1015 n.14; *National Commission on Law Enforcement and Social Justice v. Central Intelligence Agency, supra* at 1377; *cf. Halkin v. Helms*, 194 U.S.App.D.C. 82, 91, 598 F.2d 1, 10 (D.C. Cir. 1978).

### III.

Gardels' second claim is that the CIA must release the 188 documents it withheld in part or whole on July 11, 1977, and November 2, 1977. The affidavit of Gene F. Wilson, Information and Privacy Coordinator of the CIA from 1975 to 1978, indicates that Gardels' reformulated request "effectively excluded from the scope of (his) FOIA request certain other CIA offices and divisions in which almost all of the otherwise responsive documents had been located. Wilson Affidavit at ¶ 7. Wilson continues in ¶ 9 that "with only one exception, each of the documents identified to plaintiff as withheld in all or in part in my letters of July 11 and November 2, 1977, was inadvertently maintained within the administrative processing of plaintiff's request . . . ." Wilson's affidavit is entitled to substantial weight, *Ray v. Turner, supra*, and no evidence of bad faith appears on the record. The Court adopts Mr. Wilson's reasoning. Furthermore, the plaintiff implicitly recognized that these documents were outside the scope of this lawsuit when he sought to amend his complaint to include them.

---

2. The Court is not persuaded by Mr. Gardels' argument that two of Professor Oksenberg's statements at his deposition are inconsistent with the above. These are isolated statements taken out of context which do not reflect fairly the larger campus political reality portrayed elsewhere in Professor Oksenberg's deposition and affidavit.

The remaining document, identified as document number 35 in the letter of November 2, 1977, was properly withheld in part pursuant to exemptions 3 and 6. *See* Attachment 4 to Wilson Affidavit and the affidavit of F. W. M. Janney, Director of Personnel of the CIA, at 2.

The Court does not consider exemption 1 of the FOIA (national security), 5 U.S.C. § 552(b)(1).

For the reasons stated above, defendant's motion is granted and an appropriate order is entered herewith.