Nathan GARDELS, Plaintiff,

v.

CENTRAL INTELLIGENCE
AGENCY, Defendant.

Civ. A. No. 78–330.

United States District Court,
District of Columbia.

March 31, 1981.

■■■■■■■■■■■■■■■■■

Susan W. Shaffer, Mark H. Lynch, ACLU, Washington, D. C., for plaintiff.

Daniel J. Metcalfe, Dept. of Justice, Civil Div., Washington, D. C., for defendant.

## MEMORANDUM OPINION

### JUNE L. GREEN, District Judge.

This matter is before the Court on defendant's renewed motion for summary judgment. For the reasons set forth below, defendant's motion is granted and this action is dismissed.

### Background

This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. It presents one legal issue: the validity of defendant's position that it can neither confirm nor deny the existence of any requested document reflecting any covert CIA activity at any of the eleven constituent campuses of the University of California.

On January 4, 1980, this Court granted summary judgment to defendant in reliance on 5 U.S.C. § 552(b)(3) as triggered by 50 U.S.C. §§ 403(d)(3) and 403g.[1] This Court held that "to confirm or deny the existence of the documents at issue can reasonably be expected to result in the disclosure of intelligence sources and methods." *Gardels v. CIA*, 484 F.Supp. 368, 371 (D.C.D.C.1980).

On October 30, 1980, the United States Court of Appeals, expressing no view on the merits, reversed and remanded based on its finding that defendant's "Statement of Material Facts as to Which There is no Genuine Issue" accompanying its motion for summary judgment pursuant to 1–9(h) of the Local Rules of this Court was insufficient. *Gardels v. CIA*, 637 F.2d 770, 771 (D.C.Cir.1980).

### Discussion

The Court incorporates by reference its January 4, 1980 opinion in this case, *Gardels v. CIA*, 484 F.Supp. 368 (D.C.D.C.1980).

1. The Court did not reach defendant's claimed (b)(1) exemption, and will not do so today.

Plaintiff argues that there are material facts in dispute; the agency's explanation in refusing to confirm or deny the existence of the documents at issue is conclusory, speculative, and insufficient to carry the defendant's burden of proving that to confirm or deny can reasonably be expected to lead to the unauthorized disclosure of intelligence sources and methods. The Court disagrees. A summary of defendant's explanation follows.

Former CIA Deputy Director for Administration, John F. Blake, attested to the CIA's vital need in "collecting foreign intelligence" and other valuable information from members of the academic community in the discharge of its statutory functions. Affidavit of John F. Blake (Blake Affidavit), filed on June 7, 1978, at ¶ 11; *see also id.* at ¶¶ 5–8. Such academic contacts are therefore treated as "sources of intelligence," the continued maintenance of which is considered vital to the national security. *Id.* at ¶ 10.

Any document that would confirm a covert CIA-academic relationship at a particular college or university would be duly classified in accordance with the requirements of Executive Order 11652 and Executive Order 12065. *Id.* at 11. Affidavit of Don I. Wortman, current CIA Director for Administration, filed on December 21, 1979 at ¶¶ 2–7. The CIA would expect active campaigns to discover such covert sources at specific campuses, including efforts by campus activists, if the CIA were to confirm the existence of such activities at those campuses. Blake Affidavit at ¶ 9; *see also id.* at ¶¶ 12–13. The consequences of exposure to the individual members of the academic community involved are damaging and can reasonably be expected to lead to reluctance on the parts of such individuals to provide necessary and valuable cooperation to the CIA. Blake Deposition at 90–91; Affidavit of Michael Oksenberg, former National Security staff member, filed on September 7, 1978, at ¶ 8; Deposition of Michael Oksenberg, August 16, 1979, at 48–85. This reluctance to assist the CIA was recognized as a

basis for agency nondisclosure in *Halperin v. CIA*, 629 F.2d 144 at 149 (D.C.Cir.1980).

■ On the other hand, to deny the existence of CIA covert contacts at a particular college or university could, through multiple FOIA requests, result in the identification, by a process of elimination, of those colleges or universities where CIA does have such covert contact. Wortman Affidavit filed December 21, 1979, ¶ 12. In light of this potential, lent credence by the increasing number of "University" FOIA requests actually being filed,[2] the Court approves defendant's need to formulate a nationwide, consistent response to them. Accordingly, the Court does not review this University of California request presently before it in a vacuum, but in the context of the totality of the "university" requests, recognizing that the CIA's response in connection with any one institution necessarily holds implications for all others. The Court draws support for this approach from precedent:

> [The court] must take into account ... that each individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself.

*Halperin v. CIA*, 629 F.2d at 150.

In his deposition testimony, Deputy Director Blake treated some of the uses which foreign intelligence services could be expected to make of any confirmation of covert CIA contacts at specific schools; that is, their ability to "zero in" on those particular academic communities and their members. Deposition of John Francis Blake, August 16, 1979, at 65–72. Such foreign counterintelligence measures would reasonably be expected to include a foreign government's special attention to its students returning from a period of study at such schools, on the assumption that they may have established a relationship with the CIA; a foreign government's refusal to allow its students to attend such American schools in the future; and a foreign government's curtailment of access and information to academics traveling abroad from an identified school. *See id.* at 66–68. Additionally, Deputy Director Blake pointed out that certain American academic institutions are known for particular excellence in certain highly-specialized fields, often a "unique claimed expertise," and the confirmation of covert CIA contacts with such institutions would give valuable aid to foreign intelligence agencies in their efforts to discern the CIA's areas of substantive interest and activity. *Id.* at 70. *See also* Deposition of Don I. Wortman, September 26, 1979, October 2, 1979, at 90, 211, 213–14, 224–25. *See also* Defendant's Answers to Plaintiff's Second Set of Interrogatories, filed on June 8, 1979, at 6.

In *Halperin v. CIA*, 629 F.2d 144 (D.C.Cir. 1980), the Court of Appeals recently reiterated the appropriate standard of judicial review under the FOIA for national security cases such as the one at bar:

> We have held that summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.
>
> If the agency's statements meet this standard, the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency. Judges, moreover, lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case. *Id.* 148 (footnotes omitted).

---

2. Defendant in its brief filed in the Court of Appeals on August 15, 1980, indicated that there were 141 similar FOIA requests pertaining to 89 colleges (p. 26). In its so-styled "Reply Memorandum in Support of Defendant's Renewed Motion for Summary Judgment" filed February 13, 1980, defendant indicates that FOIA requests such as this had increased to encompass one hundred different American colleges and universities. P. 1 n.1. *See also* Affidavit of Morton H. Halperin filed on behalf of plaintiff on October 16, 1978, at ¶ 9.

■ Applying the *Halperin* standard of review to the foregoing agency explanation, the Court concludes that plaintiff's arguments are without merit. There is no showing of agency bad faith. The explanation is logical and plausible. *Halperin, supra.* *Hayden v. NSA,* 608 F.2d 1381, 1388 (D.C.Cir.1979). It is reasonably specific and not conclusory or vague as was the defendant's explanation in *Founding Church of Scientology v. NSA,* 610 F.2d 824, 830 (D.C. Cir.1979). It is not impermissibly speculative. As the *Halperin, supra* court directed, when evaluating agency explanations in national security FOIA cases:

A court must take into account ... that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm rather than an actual past harm. If we were to require an actual showing [of] identifiable concrete harm, we would be overstepping by a large measure the proper role of a court in a national security FOIA case. The question that Congress has placed before us is only whether the predicted danger is a reasonable expectation; and it is precisely on this point that a court, lacking expertise in the substantive matters at hand, must give substantial weight to agency statements, so long as they are plausible and not called into question by contrary evidence or evidence of agency bad faith.... The problem is to ensure *in advance* and by proper procedures, that information detrimental to national interest is not published.

*Halperin v. CIA,* 629 F.2d at 149–150 (footnotes omitted, emphasis in the original).

■ Plaintiff's argument that there is no evidence that an intelligence source has ever been compromised by the acknowledgment of covert activities must fail. It is colorable only because the CIA has never acknowledged such compromise. *See* Blake Deposition at 86. Additionally, it presumes that any such compromise would be discernible.

As the Court of Appeals acknowledged:

When a hostile intelligence service is properly doing its job it can carry out various counterintelligence operations against covert CIA operations, "without drawing attention to itself, and [the CIA has] no way of knowing." *Id.* at 149.

The agency explanation is entitled to substantial weight. *Ray v. Turner,* 587 F.2d 1187 (D.C.Cir.1978). Defendant has demonstrated that this is a bona fide intelligence matter, falling within its area of special expertise. Plaintiff's argument that no unauthorized disclosure of intelligence sources and methods will result should he prevail presumes his ability to perceive accurately all uses of the disclosure sought herein. This is unrealistic. The uses of the information sought herein are limited only by the ingenuity brought to bear to fashion them. Moreover, any documents confirmed would be exposed to the evidentiary requirements of *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), resulting in disclosure of more information.

*Conclusion*

To reiterate, applying the relevant standard for judicial review to the entire record, the Court concludes that the CIA has submitted reasonably detailed, non-conclusory statements showing the applicability of exemption (b)(3) as triggered by 50 U.S.C. §§ 403(d)(3) and 403g. The agency statements are plausible on their face and the record contains no contrary evidence or evidence of agency bad faith. Once substantial weight is given to these statements, there remain no material facts in dispute. *Halperin v. CIA,* 629 F.2d at 149–150 (D.C. Cir.1980); *Hayden v. NSA,* 608 F.2d 1381, 1388 (D.C.Cir.1979).

The Court concludes, therefore, that to confirm or deny the existence of the documents at issue can reasonably be expected to result in the unauthorized disclosure of intelligence sources and methods. *Phillippi v. CIA,* 546 F.2d 1009 at 1015, n.14 (D.C.Cir. 1976). Accordingly, defendant is entitled to judgment as a matter of law and this action is dismissed.

An appropriate order is entered herewith.