Nathan. GARDELS, Appellant,

v.

CENTRAL INTELLIGENCE AGENCY.

No. 80–1253.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 24, 1980.
Decided Oct. 30, 1980.

Susan W. Shaffer, Washington, D. C., with whom Mark H. Lynch, Washington, D. C., was on brief for appellant.

Frank Rosenfeld, Atty., Dept. of Justice, Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty. and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on brief for appellee. William Kanter, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for appellee.

Before ROBB, WALD and MIKVA, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

This is an appeal from a summary judgment for the Central Intelligence Agency (CIA) in a Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976), suit brought by Nathan Gardels, a student at the University of California (Los Angeles). As required by Local Rule 1–9(h) of the United States District Court for the District of Columbia, the government accompanied its motion for summary judgment with a Statement Of Material Facts As To Which There Is No Genuine Issue. However, because we believe the government's Rule 1–9(h) Statement was insufficient, we reverse the summary judgment on procedural grounds and express no opinion on the merits. A review of the procedural history demonstrates the need for full compliance with the local rule before the District Court may consider disposition of the case by summary judgment.

## BACKGROUND

In May 1976 Gardels requested disclosure of documents pertaining to· "all past and present contractual arrangements or agreements and personnel relationships" between the CIA and persons at the eleven campuses of the University of California. (J.A. at 11) A reformulated request dated December 13, 1976, sought disclosure of only those responsive documents retrievable through five

named divisions of the CIA [1] and those documents gathered for use by the Senate or House Select Committees on Intelligence. The named divisions were selected because they had been mentioned in the Report of the Senate Select Committee [2] as having campus contacts.

In letters to Gardels dated July 11, 1977 and November 2, 1977 the CIA released 21 documents in their entirety, 176 documents with deletions, and withheld 12 documents entirely. The released documents dealt with what the CIA characterizes as overt contacts between the Agency and the University of California. In addition, the Agency informed Gardels in the November letter that it could neither confirm nor deny the existence of any additional responsive documents "which reveal any covert CIA connections with or interest in" the University of California. (J.A. at 29) The CIA justified this refusal on the basis of exemptions 1 [3] and 3 [4] in the FOIA, contending first, that such records, if they existed, would be properly classified, and, second, that the fact of the existence or nonexistence of such records pertained to intelligence sources and methods, which the Director of CIA must protect from unauthorized disclosure pursuant to 50 U.S.C. §§ 403(d)(3) and 403g (1976).

Gardels filed suit in the District Court challenging the Agency's decisions to delete portions of documents, to withhold some documents, and to refuse to confirm or deny the existence of other documents. The District Court, following *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 347, 484 F.2d

1. The named divisions were Domestic Collection, Foreign Resources, International Organizations, Directorate of Operations, and the Office of Personnel.

2. Final Report of the Senate Select Committee to Study Government Operations with Respect to Intelligence Activities, S.Rep. No. 94–755, 94th Cong., 2d Sess. 54–58, 89–92 (1976) (Church Committee Report).

3. The FOIA expressly exempts from disclosure matters that are:
   specifically authorized under criteria established under an Executive order to be kept secret in the interest of national defense or foreign

policy and ... are in fact properly classified pursuant to such Executive order[.]
5 U.S.C. § 552(b)(1) (1976).

4. The FOIA also excludes matters that are:
   specifically exempted from disclosure by statute (other than section 552b of this title), provided that' such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be ·withheld[.]
5 U.S.C. § 552(b)(3) (1976).

820, 827 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), directed the CIA to file the detailed index and justification for withholding some documents and deleting portions of others. The court also ordered the CIA to file the detailed public affidavit required by *Phillippi v. CIA,* 178 U.S.App.D.C. 243, 247, 546 F.2d 1009, 1013 (1976), explaining its refusal to confirm or deny the existence of responsive documents pertaining to covert contacts.

The CIA responded by filing the affidavit of F.W.M. Janney, Director of Personnel of the CIA (the *Vaughn* index), and the affidavit of John F. Blake, then Deputy Director for Administration of the CIA and Chairman of its Information Review Committee (the *Phillippi* affidavit). The Janney affidavit explained the reasons for deleting portions of the Office of Personnel records that were released to Gardels and for withholding some of the requested documents entirely. These documents are not at issue in this appeal. The Blake affidavit dealt with the reasons why the CIA could neither confirm nor deny the existence of documents pertaining to covert CIA contacts with the University of California. The principal justification offered in the affidavit was that public confirmation of the existence of covert contacts at universities would lead to "active and abrasive campaigns to discover and expose the individuals concerned on at least some of the campuses . . . ." (J.A. at 38) Alternatively, said Blake, public denial of covert contacts at a particular university could result in the ultimate identification, through a process of elimination, of those universities at which the CIA has covert contacts. It is the accuracy and adequacy of these justifications which Gardels challenges on appeal.

Gardels initially tested the assertions in the Blake affidavit by submitting interrogatories, which Blake answered on behalf of the CIA on August 15, 1978. Shortly thereafter the CIA moved for summary judgment. Attached to the motion for summary judgment were the required Rule 1–9(h) Statement and the affidavits of Gene F. Wilson and Michel Oksenberg. Wilson holds an executive position in the Office of Personnel of the CIA and served as Information and Privacy Coordinator for the Agency from 1975 to 1978. His affidavit dealt with the documents addressed in the earlier Janney affidavit, which are not at issue in this appeal. Oksenberg is currently a staff member of the National Security Council and a professor on leave from the University of Michigan who voluntarily and publicly disclosed that he had had a confidential relationship with the CIA before joining the NSC staff. His affidavit offered an academic's perspective on the likely consequences of disclosing any information that could lead to the identification of other academics who have had confidential relationships with the CIA.

Gardels opposed the CIA's summary judgment motion by filing a Rule 1–9(h) Statement Of Material Facts As To Which There Are Genuine Issues and an affidavit from his attorney pursuant to Rule 56(f), Fed.R.Civ.P., explaining why he thought further discovery was needed. Gardels also filed an affidavit by Morton Halperin in which Halperin discussed his effort to encourage colleges and universities to adopt guidelines "prohibiting or severely restricting covert relations" with the CIA. (J.A. at 72) On October 13, 1978 Gardels filed a second set of interrogatories.

On October 18, 1978 the District Court, *sua sponte,* ordered the CIA to submit all documents responsive to Gardels' request to the court for *in camera* inspection. The CIA moved for reconsideration on the ground that this order required it to do what it alleged it could not do—confirm or deny the existence of the documents. The District Court denied the motion to reconsider but granted the CIA's motion for certification of the order for immediate interlocutory appeal under 28 U.S.C. § 1292(b) (1976). In a *per curiam* order this Court indicated the desirability of creating "as complete a public record as is possible" before proceeding with *in camera* inspection of confidential information and deferred consideration of the application to appeal pending the completion of discovery in the District Court. *CIA v. Gardels,* No. 78–

8090, Order of March 26, 1979. On October 31, 1979 the District Court vacated its *in camera* inspection order. This court then granted the CIA's motion to withdraw its application for interlocutory appeal.

Following the remand from this court, Gardels' second set of interrogatories was answered by Don I. Wortman, Blake's successor at the CIA, and Gardels deposed Blake, Oksenberg, and Wortman. On January 4, 1980 the District Court granted the CIA's motion for summary judgment. *Gardels v. CIA*, 484 F.Supp. 368 (1980).

LOCAL RULE 1–9(h)

■ Local Rule 1–9(h) of the United States District Court for the District of Columbia provides in pertinent part:

> With each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure there shall be served and filed ... a statement of the material facts as to which the moving party contends there is no genuine issue, and shall include therein references to the parts of the record relied on to support such statement.

The Rule 1–9(h) Statement filed by the CIA with its motion for summary judgment reads in its entirety:

> Defendant adopts and incorporates by reference as its Statement Of Material Facts As To Which There Is No Genuine Issue the affidavits of John F. Blake and F.W.M. Janney, filed with the Court on June 7, 1978; Defendant's Answer To Plaintiff's First Set Of Interrogatories, filed on August 16, 1978; and the affidavits of Gene F. Wilson and Michel Oksenberg, filed on this date.

The courts of this circuit have held that failure to file a proper Rule 1–9(h) Statement in making or opposing a motion for summary judgment may be fatal to the delinquent party's position. *Thompson v. Evening Star Newspaper Co.*, 129 U.S.App. D.C. 299, 301–02, 394 F.2d 774, 776–77, *cert. denied*, 393 U.S. 884, 89 S.Ct. 194, 21 L.Ed.2d 160 (1968); *Peroff v. Manuel*, 421 F.Supp. 570, 576 n.15 (D.D.C.1976); *see Johnson v. American General Insurance Co.*, 296 F.Supp. 802, 804 n.4 (D.D.C.1969). Re-quiring strict compliance with the local rule is justified both by the nature of summary judgment and by the rule's purposes. The moving party's statement specifies the material facts and directs the district judge and the opponent of summary judgment to the parts of the record which the movant believes support his statement. The opponent then has the opportunity to respond by filing a counter-statement and affidavits showing genuine factual issues. The procedure contemplated by the rule thus isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record. These purposes clearly are not served when one party, particularly the moving party, fails in his statement to specify the material facts upon which he relies and merely incorporates entire affidavits and other materials without reference to the particular facts recited therein which support his view that no genuine issues of material fact exist. Such a defect is exemplified by the CIA's amorphous statement in this case. *See Thompson v. Evening Star Newspaper Co., supra*, 129 U.S.App.D.C. at 302 n.9, 394 F.2d at 777 n.9.

■ The District Court, in its discretion, may consider a motion for summary judgment even in the absence of a proper Rule 1–9(h) Statement. *Johnson v. American General Insurance Co., supra*, 296 F.Supp. at 805 n.4. However we believe it was inappropriate to do so in this case. When the CIA filed its motion for summary judgment and Rule 1–9(h) Statement, Gardels had not yet propounded his second set of interrogatories or deposed Blake, Oksenberg, or Wortman. Therefore the facts disclosed by the plaintiff's discovery were not addressed in the Rule 1–9(h) Statement. By the time the District Court granted summary judgment, however, the CIA's answers to the second set of interrogatories and the deposition transcripts had been filed with the court. The CIA did not amend its Rule 1–9(h) Statement and apparently relied primarily on the Blake and Oksenberg affidavits throughout the litiga-

tion in the trial court. *Gardels v. CIA, supra,* 484 F.Supp. at 370. In the brief filed with this court, however, the CIA relies heavily on Blake's deposition testimony to sustain the summary judgment. This testimony explained and emphasized the usefulness of the information sought by Gardels to hostile foreign intelligence services. In contrast the Blake affidavit, cited in the Rule 1–9(h) statement, focused solely on the likely *domestic* consequences of confirming or denying the existence of the requested documents, that is, the likelihood of successful campus campaigns to identify and expose CIA sources affiliated with the University.

█ In *Founding Church of Scientology v. National Security Agency,* 197 U.S.App. D.C. 305, 610 F.2d 824 (1979), we disapproved the NSA's attempt to remedy deficiencies in its public affidavit during the course of an appeal in this court. *Id.* at 313, 610 F.2d at 832. While we express no opinion on the adequacy of the CIA's affidavits in the present case, we do note the similarity between the litigation strategies of the two agencies, and we adhere to the position expressed in the *Founding Church* case that the District Court is the only appropriate forum for *de novo* consideration of the factual basis for claims of exemption under the FOIA. Because the CIA's affidavits dealt only with the "campus campaign" theory and because these affidavits were incorporated in their entirety as the Agency's Rule 1–9(h) Statement, the plaintiff's efforts to oppose the summary judgment were concentrated on raising a factual issue as to the likelihood of successful campus campaigns, and he was denied an opportunity fairly to contest the "foreign intelligence service" theory. That theory, therefore, was not subjected to the close, adversarial scrutiny that is the goal of Local Rule 1–9(h).

The CIA's inadequate Rule 1–9(h) Statement makes it impossible for us to determine whether genuine issues of material fact existed when summary judgment was granted. Moreover, we cannot determine whether and to what extent the District Court considered the deposition testimony and the foreign intelligence services theory contained therein when it awarded summary judgment to the CIA. Accordingly we find that the plaintiff was handicapped in his effort to oppose the summary judgment by the CIA's failure to file a proper Rule 1–9(h) Statement.

## CONCLUSION

For the foregoing reasons we remand the case to the District Court so that the CIA may file a proper Rule 1–9(h) Statement and include therein a specific and detailed recitation of material facts relating to the foreign intelligence services theory, if it intends to rely on that theory, in whole or in part. Plaintiff will then be provided the opportunity of contesting the CIA's new Rule 1–9(h) Statement. Our remand is not to be taken as any indication of our views on the merits. Mr. Gardels' FOIA request raises issues that should not be considered by an appellate court without the benefit of the District Court's judgment, rendered after the parties have had an opportunity to develop the fullest possible factual background for the CIA's claims of exemption under the FOIA. *See Stearns v. Veterans of Foreign Wars,* 163 U.S.App.D.C. 120, 123, 500 F.2d 788, 791 (1974).

The case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*