Kenneth M. BURKE, Appellant

v.

William B. GOULD IV, Chairman, National Labor Relations Board and National Labor Relations Board, Appellees

No. 00–5359.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 19, 2002.

Decided April 12, 2002.

**514**

Michael P. Deeds argued the cause for appellant. With him on the brief was James L. Kestell.

Scott S. Harris, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Roscoe C. Howard, Jr., U.S. Attorney and R. Craig Lawrence, Assistant U.S. Attorney.

Before: HENDERSON, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

Opinion dissenting in part filed by Circuit Judge RANDOLPH.

ROGERS, Circuit Judge:

Kenneth M. Burke appeals the grant of summary judgment to the National Labor Relations Board in his reverse discrimination and retaliation case, on the principal ground that the district court failed to draw all reasonable inferences in his favor and instead made factual findings on disputed issues. In suing the Board for violations of Title VII, 42 U.S.C. § 2000e *et seq.*, as well as § 1981, Burke challenged his performance evaluations for 1996 and 1997, the removal of his supervisory responsibilities in January 1997, and his non-selection for the position of Deputy Chief of the Information Technology Branch in November 1997. We affirm the grant of summary judgment on Burke's discrimination claims and reverse the grant of summary judgment on two of his retaliation claims.

**I.**

Burke began working for the Board in 1974 as a computer systems analyst at the GS–12 compensation level. As the result

of a series of promotions, he became Chief of the Office Systems Section serving as a supervisory computer systems analyst in 1988, and by the following year attained the GS–15 compensation level. Throughout this period, Burke received exemplary performance evaluations, resulting in performance awards or cash bonuses in nearly every year. During the period relevant to this appeal, Burke's immediate supervisor was Samuel Markman, Chief of the Management and Information Systems Branch ("MISB"), who reported to Frank Battle, the Deputy of the Administration Division. Battle reported to Gloria Joseph, the Director of the Administration Division, who in turn reported to the General Counsel of the Board through Joseph Frankl, the Assistant General Counsel. In July 1997, Louis Adams, who had worked for the General Services Administration for twenty years, replaced Markman; Adams reorganized the MISB, and selected Larry Thompson as his Deputy Chief. Except for Joseph and Thompson, who are African Americans, all persons mentioned by name in this opinion are white males.

This litigation arose out of the Board's decision to award its Fiscal Year 1996 computer maintenance contract to Dynatech Integrated Systems ("Dynatech"). In 1995, Burke had recommended Dynatech, a minority-owned company, for a short-term contract to test its capabilities. Based on Dynatech's impressive performance, Burke recommended that Dynatech be awarded the computer maintenance contract. Burke served as the agency's contracting officer technical representative ("COTR") to Dynatech. As the result of Burke's performance as COTR, Joseph, Battle, and Adams took various personnel actions affecting Burke. Although at all times he retained his GS–15 compensation level, Burke's performance evaluation for the 1996 (covering the period July 1, 1995 to June 30, 1996) was downgraded from his usual "Outstand-

ing" rating to "Commendable," and his performance evaluation for the 1997 (covering the period July 1, 1996 to June 30, 1997) was downgraded to "Fully Successful," one level below "Commendable." After Burke voluntarily surrendered his COTR responsibilities in June 1996 (before learning that Joseph had instructed Markman to relieve him of these responsibilities), Burke was denied direct access to the network password in July 1996. Then, in February 1997, with the concurrence of the Board's General Counsel, Burke was relieved of his supervisory responsibilities as section chief and assigned to unspecified duties. Burke was passed over in October 1997 for the newly-created position of Deputy Chief to Adams; an independent panel rated Burke lowest of the four best-qualified applicants, while Thompson (whom Adams selected) ranked highest.

The personnel actions were based on events that followed Dynatech's decision in March 1996, on advice of counsel, to replace its on-site program manager, Dwight Whitted, who had developed a close personal friendship with Burke, in order to avoid potential violation of federal contracting requirements. Thereafter, in the view of Burke's supervisors and others, including Dynatech officials, Burke grew increasingly critical and unprofessional in his dealings with Dynatech. On April 29, 1996, Burke sent an agency-wide e-mail survey soliciting feedback from regional office managers on Dynatech's performance that Joseph and Sunderlin viewed as biased and intended to encourage negative feedback. On May 3, 1996, during a meeting with Joseph, Markman, Battle, and Frankl, Burke described Dynatech as being "screamingly out of compliance" with its contractual obligations. According to Joseph, this was the first time she had heard Burke express such a negative assessment of Dynatech's performance and represented a dramatic departure from his

prior representations to her and Burke's other superiors. Sunderlin also reported to Joseph that during an April 15, 1996, meeting with Dynatech officials, Burke exhibited "offensive and unprofessional" behavior, including "disparaging remarks designed to embarrass and belittle Dynatech officials."

On August 16, 1996, Burke filed an anonymous request for the Board's Inspector General to review Dynatech's performance. After Burke's name was revealed to the General Counsel on August 22, Joseph, on August 27, asked the Inspector General to investigate whether Burke's personal friendship with Whitted, Dynatech's former project manager, was unethical and influenced Burke's performance of his official duties. In November 1996, Burke filed an informal complaint with the Equal Opportunity Office ("EEO"); Joseph learned of this complaint on November 26, 1996. Burke filed a formal EEO complaint on February 12, 1997. On February 28, 1997, he filed a second request for the Inspector General to investigate alleged reprisals taken against him by Joseph because of his prior complaint to the Inspector General and his efforts to obtain contractual compliance by Dynatech.

Burke filed his lawsuit on July 20, 1998, alleging that the Board's personnel actions constituted unlawful discrimination and retaliation under Title VII and 42 U.S.C. § 1981. (His complaint included a claim under the Privacy Act, 5 U.S.C. § 552a(b), which was dismissed and is not at issue on appeal.) The Board filed a motion for summary judgment, attaching a Statement of Material Facts Not In Genuine Dispute ("Statement") referring to declarations and affidavits from Joseph, Battle, Sunderlin, and Adams, as well as Burke's deposition. The Board also attached exhibits, including three memoranda written by Burke (including the e-mail survey), agency letters to Dynatech, and the declarations of Joseph, Battle, Sunderlin, and Adams. In response, Burke filed a memorandum in opposition to summary judgment, attaching his affidavit (with attachments) and a redacted report of the Inspector General. His opposition memorandum contained a twenty-five page section titled "Facts" that included some references to the record. Burke also filed two "Statement of Material Facts Which Are Genuinely in Dispute" ("Statement"), the first admitting or denying the facts alleged by the Board in its Statement and containing one reference to the record, and the second making factual assertions without any references to the record. The Board responded to Burke's opposition, arguing that: (1) several of Burke's claims were not "adverse employment actions" and were therefore barred under the recently-issued decision in *Brown v. Brody*, 199 F.3d 446 (D.C.Cir. 1999); (2) Burke's Statement, by failing to comply with Local Rule 56.1, admitted virtually all of the facts set forth in the Board's Statement; (3) Burke effectively conceded his discrimination claims because he failed to allege any conduct, much less offer any proof, that his employer had taken personnel actions "because of [Burke]'s race, color, ... [or] sex....," 42 U.S.C. § 2000e-2(a)(1); and (4) Burke virtually abandoned his claim of non-selection as Deputy Chief because he only argued that he was more qualified than Thompson.

The district court granted summary judgment to the Board on all of Burke's claims. Not invoking the requirements of Local Rule 56.1, the district court reviewed the exhibits provided by the parties, and found that Burke failed to meet his burden of showing under *Brown*, 199 F.3d at 455, 458, that his 1996 and 1997 performance evaluations constituted adverse employment actions. The district court also found, in view of the record evidence, that Burke's "Commendable" rating in 1996

"reasonably reflected [his] performance as COTR under the circumstances," and that his "Fully Successful" rating in 1997 was "justified" because it "reasonably reflected the level of [Burke]'s performance during the relevant time period." Regarding the removal of his supervisory responsibilities, the district court ruled that Burke failed to show an adverse employment action, and, assuming an adverse action, that Burke failed to show that all of the reasons proffered by the Board for relieving him of his supervisory responsibilities were a pretext for discrimination or retaliation. The district court ruled that Burke also failed to offer evidence from which to infer that the Board's legitimate, nondiscriminatory reasons for passing over him for the position of Deputy Chief to Adams were pretextual. Finally, the court rejected Burke's § 1981 claim on the ground that he failed to state facts that would support an inference of purposeful discrimination against him.

## II.

Rule 56(c) of the Federal Rule of Civil Procedure provides, in relevant part, that upon the filing of a motion for summary judgment:

> The judgment sought shall be rendered forthwith *if* the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (emphasis added)

The Supreme Court has observed that "it is from this list that one would normally expect the nonmoving party to make the showing [to avoid summary judgment]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Federal Rule of Civil Procedure 56(e) makes clear, however, that in opposing a motion for summary judgment that is supported as provided in the Rule, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Presumably in the interests of further simplifying matters, Local Rule 56.1 of the United States District Court for the District of Columbia (previously Local Rule 108(h), and before that Local Rule 1–9(h)), provides, in relevant part, that:

> An opposition to such motion shall be accompanied by a *separate concise statement* of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, *which shall include references to the parts of the record relied upon* to support the statement. * * * In determining a motion for summary judgment, the court may assume the facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion. (emphases added)

This circuit has long upheld strict compliance with the district court's local rules on summary judgment when invoked by the district court. Thus, in addressing the moving party's failure to comply with the local rule, the court explained in *Gardels v. Central Intelligence Agency*, 637 F.2d 770 (D.C.Cir.1980), that "[t]he procedure contemplated by the [local] rule ... isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record." *Id.* at 773. Likewise, in *Tarpley v. Greene*, 684 F.2d 1 (D.C.Cir. 1982), where the district court ruled that the nonmoving party had failed to comply with Rule 56(e) and the local rule, *id.* at 5,

this court affirmed the grant of summary judgment, observing that the nonmoving party had not "cite[d] any record evidence, relying instead on the complaint itself," and in his statement of genuine factual issues "did not set forth specific, material facts, but simply asserted, without citing evidence in the record, that there was a disputed issue . . . ." *Id.* at 7. In *Twist v. Meese,* 854 F.2d 1421 (D.C.Cir.1988), the court rejected the notion that a district court abuses its discretion in accepting as true the movant's properly supported statement of material facts not in dispute where the opposing party failed to submit a counterstatement. *Id.* at 1424. As the court put it, "a district court judge should not be obligated to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make his own analysis and determination of what may, or may not, be a genuine issue of material disputed fact." *Id.* at 1425 (citing *Gardels,* 637 F.2d at 773).

On the other hand, the court has cautioned, in view of the severity of dismissal of a potentially meritorious claim, that treating an issue as conceded for failure to respond fully to a motion for summary judgment "should only be applied to egregious conduct." *Robbins v. Reagan,* 780 F.2d 37, 52 & n. 23 (D.C.Cir.1985) (citing *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976)). The presence of egregious conduct in *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145 (D.C.Cir. 1996), sufficed for the court to decline to hold that the district court abused its discretion in denying, after a variety of continuances and the grant of several motions to correct deficiencies, a further request to supplement a statement of material facts in dispute where the moving party claimed it would be prejudiced, and in striking a deficient statement in which the plaintiff failed to raise the central claim of racial discrimination underlying his Title VII claim, and which also lacked citations to the record, depositions, or affidavits. *See id.* at 147–48. There, the court rejected the argument that a memorandum opposing summary judgment that included a thirty-one page statement of "relevant facts" cured the failure to conform to the requirement of the local rule that the opposing party file "a concise statement" of material facts in dispute. *Id.* at 153 & n. 6.

The plain language of Local Rule 56.1 does not require the district court to enter judgment because of the nonmoving party's default in complying with the local rule. It provides that the district court "*may* assume the facts identified by the moving party in its statement of material facts are admitted" (emphasis added) in the absence of a statement of genuine issues filed in opposition to the motion for summary judgment. Consequently, this court has long recognized that the district court does not abuse its discretion by declining to invoke the requirements of the local rule in ruling on a motion for summary judgment. For example, in *Cleveland County Assoc. for Gov't by the People v. Cleveland County Bd. of Comm'rs,* 142 F.3d 468, 475 n. 12 (D.C.Cir.1998), the court rejected the argument that failure to comply with the local rule mandated judgment against the defaulting party, holding that it was within the district court's discretion to consider its motion despite the lapse. *Id.* at 475 n. 12. The court quoted the statement in *Gardels,* 637 F.2d at 773, where the court had acknowledged that "[t]he district court, in its discretion, may consider a motion for summary judgment even in the absence of a proper [Rule 56.1] Statement."

Nothing in *Frito-Lay, Inc. v. Willoughby,* 863 F.2d 1029 (D.C.Cir.1988), which our dissenting colleague somehow reads as

our only precedent, *see* dissenting opinion at 4, is to the contrary. One will search in vain for any indication that the district court in that case invoked the local rule (then Rule 108(h)), much less that this court disposed of the appeal on any ground other than the failure of the nonmovant to introduce Rule 56(c) materials in accordance with the teachings of *Anderson* and *Celotex. See id.* at 1034. In *Frito-Lay,* we did not mention the cases cited in this opinion from this circuit, nor need we have done so given the failure of the nonmovant to conform with Rule 56(c). That case involved "an unusual application" of Rule 56, *id.* at 1030, in which, under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq.,* the Secretary's findings, which were adverse to the nonmovant, established "the prima facie case," *id.* § 499g(c)(1982), "unless," as the district court noted, "it is overcome by evidence submitted by the [nonmovant]." *Frito-Lay,* 863 F.2d at 1031. Unlike Burke, who introduced various forms of Rule 56(c) material in an attempt to negate the Board's Statement of Facts, the nonmovant in *Frito-Lay* did not, and this court properly held him to task for his failure. Moreover, to the extent our dissenting colleague suggests that the burden to comply with Local Rule 56.1 is greater on the nonmoving party, *see* dissenting opinion at 519, our decision in *Gardels* pointed out that the local rule's "purposes are not served when one party, *particularly the moving party,* fails in his statement to specify material facts upon which he relies," *Gardels,* 637 F.2d at 773 (emphasis added), because that failure denies the nonmovant of "an opportunity fairly to contest" the movant's case. *Id.* at 774.

■ In granting summary judgment for the Board, the district court here did not rely on the local rule. Rather, as its opinion makes clear, the district court exercised its discretion to consider Burke's claims on the merits in light of the evi-dence presented by the parties. The Board alerted the district court to the implications of Burke's noncompliance with the local rule, but the district court expressly stated that it had reviewed the parties' exhibits. On appeal, the Board does not contend that the district court abused its discretion in failing to hold Burke to the requirements of the local rule, and we see no basis on which we could so hold. By its terms, Local Rule 56.1 leaves it to the district court to decide whether to "assume that facts identified by the moving party ... are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Local Rule 56.1. Unlike *Gardels,* where this court, in reversing the grant of summary judgment, focused on the fact that the moving party's failure to comply with the local rule handicapped the plaintiff's effort to oppose summary judgment, 637 F.2d at 774, Burke faced no such problem in responding to the Board's motion for summary judgment motion as it fully complied with the local rule. Burke's case is also is distinguishable from *Jackson, Tarpley,* and *Twist* because the district court in those cases had invoked the local rule, and on appeal this court held that the district court did not abuse its discretion in enforcing the local rule.

Furthermore, because the Local Rules "supplement" and "shall be construed in harmony" with the Federal Rules of Civil and Criminal Procedure, *see* Local Rule 1.1(a); *see Frazier v. Heebe,* 482 U.S. 641, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987); *see also Miner v. Atlass,* 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960), the district court is required by Federal Rule of Civil Procedure 56(c) itself to consider the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in determining whether "there is no genuine issue as to any material fact and that the moving par-

ty is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986). Our cases are consistent with the requirements of Rule 56(c). *See, e.g., Jackson*, 101 F.3d at 150 (quoting Rule 56(c) and citing *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; and *Anderson*, 477 U.S. at 256–67, 106 S.Ct. at 2514–20). Although Local Rule 56.1 facilitates more precise identification of the record materials on which the parties rely, Rule 56(c) identifies the materials the court is to consider before granting summary judgment. Accordingly, on *de novo* review, *see Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994), we review the grant of summary judgment in light of these requirements.

### A.

■ On the allegations of race discrimination, none of Burke's Rule 56(c) materials provide a basis on which to reverse the grant of summary judgment. As the Supreme Court stated in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), once a defendant offers a non-discriminatory explanation for its actions, "the presumption [of discrimination] . . . simply drops out of the picture." *Id.* at 511, 113 S.Ct. at 2749. Further, the Court instructed in *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, that bare allegations of discrimination are insufficient to defeat a properly supported motion for summary judgment. *See also Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11. Thus, if the evidence presented by the opposing party is "merely colorable" or "not significantly probative," summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2511.

Burke's Statement summarily asserts that each of the challenged personnel decisions was "motivated by discriminatory and retaliatory illegal motivations." When asked during his deposition what evidence he had of racial discrimination, Burke's typical answers were: "I think that [Joseph] was attacking me because I was trying to call to account a black owned firm;" "[w]hen I put all the characters down in a row [on a chart] I discovered that they were all black on one side and all white on the other, so that led me to believe there was a racial component;" and "I would guess they [Joseph and Dynatech] simply formed an alliance based on their racial [word[s] missing]." Similar statements appear in his affidavit. *See* Burke Affidavit at 10.

■ To the extent that other Rule 56(c) materials are mentioned in Burke's opposition memorandum, none provide more than "merely colorable," much less "significantly probative," evidence of unlawful discrimination against Burke under 42 U.S.C. § 2000e–2(a)(1). *Cf. Carpenter v. FNMA*, 165 F.3d 69, 72–73 (D.C.Cir.1999). Burke's opposition refers to his declaration, the declaration of his direct supervisor, Markman, Markman's affidavit alleging that *he* was discriminated against when he was removed from his position in February 1997, and the declarations of two other employees; none state or imply that the personnel actions affecting Burke were based on his race. Although Burke claimed in his opposition memorandum that the Inspector General's report showed that there were disputed issues of material fact concerning the Board's proffered reasons for acting as it did, the Inspector General's report did not find that the Board's reasons for its personnel actions were a pretext for unlawful discrimination.

Therefore, even assuming that the personnel actions Burke challenges are adverse employment actions, Burke fails to show that the Board took the challenged actions because of his race and so summary judgment was appropriate on his discrimination claims.

## B.

We reach a different conclusion regarding the appropriateness of summary judgment with respect to two of Burke's claims of retaliation as a result of the exercise of his protected rights.

In explaining the basis for the personnel actions affecting Burke, the Board relies in part on evidence of Burke's unprofessional conduct towards Dynatech officials and in part on a decline in his job performance after June 1996. Regarding his conduct, the Board points to a memorandum that Burke wrote to Markman stating that in order to protect his reputation following the revelation of his friendship with Whitted, the Dynatech representative, he would have to "abort the Dynatech contract"; further, he threatened "to develop a line of evidence [against Dynatech] to cause [its] debarment." Dynatech officials and Sunderlin, the Chief of Procurement, advised Joseph of other unprofessional statements and conduct on Burke's part. Burke does not deny that Dynatech could reasonably perceive that his attitude was related to emotions caused by the removal of his friend as Dynatech's contract manager. Joseph and Sunderlin also considered Burke's email survey to all nationwide offices to be an act unbecoming the COTR. They further questioned Burke's failure to directly and timely notify Joseph, the agency's contracting officer, that one of the agency's largest contractor accounts was "screamingly out of compliance." As the district court noted, however, Burke disputed in his declaration and affidavit the interpretation of his email survey and whether he was required to directly inform the contracting officer of any problems.

■ With regard to Burke's removal as COTR, the district court granted summary judgment, finding in view of *Fischbach*, 86 F.3d at 1183, that "the record established that the defendants *perceived* and *believed* [Burke] to be performing poorly based on

at least four examples of such arguably unprofessional conduct directed at Dynatech and its officials," but that, by his own admission, he had "removed himself before the defendants could act." Because Burke admits in his declaration and affidavit that he voluntarily surrendered his COTR responsibilities, the district court properly concluded that he is not in a position to show a retaliatory act by the Board.

■ On Burke's claims as to the removal of his supervisory responsibilities and reassignment to unspecified duties, the district court granted summary judgment, relying on *Furnco Contr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978), in concluding that Burke failed to eliminate all possible legitimate reasons for the Board's actions and therefore failed to carry his burden of demonstrating that it was more likely than not that the Board was motivated by impermissible considerations. The Board's Statement explains that during the last half of 1996, Joseph and Battle "came to the conclusion that [Burke] should not continue as head of the Office Systems section." Among the grounds supporting their conclusion about the decline in his job performance were "reports from other people within MISB that Mr. Burke had demonstrated favoritism towards certain of his employees, was spending a larger than normal amount of time behind closed doors, and generally was not as actively involved in a major deployment of new personnel computers for the agency as he should have been." However, the declaration of Burke's immediate supervisor, Markman, disputed that Burke's performance regressed from July 1996 through January 1997, stating that he did not criticize Burke's work "nor was there any basis for criticizing his performance." The declaration of a GS–13 network administrator, although admitting that she told Joseph

that Burke was not performing much work on network administration after the network password was taken away from him in July 1996, denied informing Joseph that Burke was favoring some employees under his supervision. Moreover, the Inspector General found that "there is no evidence to support the allegations that during the summer, fall and winter of 1996 Burke failed to do his work or that he regressed in it, except for the testimony of Joseph and Battle—neither of whom were in a position to observe his work."

In view of the sequence of events immediately prior to the time Burke was relieved of his supervisory responsibilities, the Rule 56(c) materials challenging the Board's proffered reasons suffice to raise a genuine issue of disputed fact. Cf. Forman v. Small, 271 F.3d 285 (D.C.Cir.2001). The job performance evidence on which the Board relied either occurred during the 1996 performance evaluation period while Burke was the COTR and prior to the time Burke took protected actions by complaining to the Inspector General and the EEO, or involved Burke's work in the last half of the 1996 calendar year when he was no longer the COTR. The declaration of his immediate supervisor challenged the credibility of Joseph and Battle. Similar evidence presented to the Inspector General presumably also would be admissible at trial. See Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. Hence, summary judgment was inappropriately granted on Burke's claim that the Board acted in unlawful retaliation in relieving him of his supervisory responsibilities. See Anderson, 477 U.S. at 252, 106 S.Ct. at 2512; Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1290 (D.C.Cir.1998).

■ As to Burke's claims that the Board acted out of retaliation in lowering his performance ratings, the district court ruled that Burke had failed to show that they were adverse employment actions un-der Brown, 199 F.3d 446. Although we have no doubt that the removal of Burke's supervisory responsibilities constituted an adverse employment action, the issue is not always so clear with regard to performance evaluations. See id. at 458. As this court observed in Passer v. American Chemical Society, 935 F.2d 322 (D.C.Cir. 1991), "the [Title VII] statute does not limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer, or demotion." Id. at 330 (citations omitted). The district court correctly ruled that Burke failed to make the necessary showing of adversity as to his 1996 performance evaluation. See Brown, 199 F.3d at 458. But Burke's Rule 56(c) materials raise a genuine issue whether his 1997 performance evaluation was the result of unlawful retaliation, essentially for the same reasons discussed in regard to the Board's action in relieving him of his supervisory responsibilities and because in his declaration Burke claimed that as a result of his 1997 evaluation he was denied bonus and cash awards that he received nearly every year previously. See Russell v. Principi, 257 F.3d 815 (D.C.Cir.2001). We hold first, that summary judgment on Burke's retaliation claims was appropriate with respect to Burke's 1996 performance evaluation because it was conducted prior to the time he lodged his complaints with the Inspector General and the EEO, and second, that the Board was not entitled to summary judgment on Burke's 1997 performance evaluation because that review was conducted after Burke engaged in protected activity (and after Joseph learned of his EEO complaint) and he sufficiently alleged loss of "a tangible, quantifiable award." Id. at 819.

## C.

■ Finally, we affirm the grant of summary judgment on Burke's claim that

his non-selection as Deputy Chief in 1997 was discriminatory and retaliatory. Not only does Burke make no mention of his non-selection as Deputy Chief in his affidavit, his declaration attacks the choice of Thompson on the ground that he was less qualified, but not on the ground that Burke was denied the position because of his race or in retaliation for his protected activity. Nor do the referenced affidavits in Burke's opposition memorandum dispute either Adams' affidavit stating that he was unaware that Burke had filed an EEO complaint when he selected Thompson as Deputy Chief, or the fact that the independent panel's assessment of Thompson was that he was the best candidate among the four persons (including Burke) for the Deputy Chief position.

Accordingly, we reverse and remand on Burke's claims that the removal of his supervisory duties and reassignment to unclassified duties and his 1997 performance evaluation were in retaliation for protected activity; otherwise we affirm.

RANDOLPH, Circuit Judge, dissenting in part:

Counsel: "In the book of nature, my Lords, it is written—"

Lord Chief Justice Ellenborough: "Will you have the goodness to mention the *page*, Sir, if you please?"

3 JOHN LORD CAMPBELL, THE LIVES OF THE CHIEF JUSTICES OF ENGLAND 239 (1858).

Burke never mentioned the page, or any pages, of the record in his "Statement of Material Facts in Dispute," filed in response to the NLRB's motion for summary judgment. For that reason, I would affirm the judgment of the district court in its entirety. The decision of the majority disregards the governing rules, fills in the blanks for Burke, and thereby lays a trap not only for our district judges but also for all parties who move for summary judgment. The new and unprecedented course thus set for our circuit is a course other circuits have wisely shunned. Worse, it is a course directly at odds with the law of this circuit.

A rule of the district court requires nonmoving parties to provide the district court and opposing counsel with "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, *which shall include references to the parts of the record relied on to support the statement*." RULE 56.1, RULES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA (italics added). This is a straightforward rule, easy to understand and easy to follow. Burke flagrantly violated it. He dumped nearly two hundred pages of material into the record, large portions of which contained information that would be inadmissible at trial and thus had no proper function in opposing summary judgment. *See* WILLIAM W. SCHWARZER ET AL., THE ANALYSIS AND DECISION OF SUMMARY JUDGMENT MOTIONS 50 (1991). His "Statement of Material Facts in Dispute" consisted of seven short paragraphs generally repeating the allegations in his complaint and containing no references to any evidence on file with the court.

By proceeding in this manner, in violation of Local Rule 56.1, Burke also violated Rule 56 of the Federal Rules of Civil Procedure. Rule 56(e) requires the nonmoving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting FED. R. CIV. P. 56(e)). There was a time in the Fifth Circuit when the nonmoving party's failure to designate "specific facts" was not fatal. If the record contained—in the language of Rule 56(c)—"depositions, answers to interrogatories, and admissions" and "affidavits"

showing the existence of material facts in genuine dispute, it was the district court's responsibility to ferret the evidence out, upon pain of reversal. *See Higgenbotham v. Ochsner Found. Hosp.,* 607 F.2d 653, 656–57 (5th Cir.1979); *Keiser v. Coliseum Props., Inc.,* 614 F.2d 406, 410–11 (5th Cir.1980). This is basically the position the majority stakes out in our case. Rule 56(c), we are told, requires district judges to consider all these items in determining whether to grant summary judgment, even if the nonmovant cited none of them in his statement of material facts in dispute. Maj. op. at 519–20. The Fifth Circuit has now seen the error of its approach and has overruled *Higgenbotham* and *Keiser. See Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 916 n. 8 (5th Cir.1992). As the Seventh Circuit pointed out in *L.S. Heath & Son v. AT&T Info. Sys., Inc.,* 9 F.3d 561, 567 (1993), that line of older Fifth Circuit cases was "in tension with the Supreme Court's more recent summary judgment jurisprudence" in *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Today, in the Fifth and Seventh Circuits, the nonmoving party must cite to the evidence in order for that evidence to be considered part of the summary judgment record. *L.S. Heath & Son,* 9 F.3d at 567. That is the law in other circuits as well. *Id.* (citing *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989)); *see also Guarino v. Brookfield Township Trs.,* 980 F.2d 399, 405 (6th Cir.1992); *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir.1998). Until today, it had also been the law of this circuit.

In *Frito-Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1033 (D.C.Cir.1988), we held that Rule 56 required the nonmoving party to cite evidence and rejected the idea that

"'the entire record in the case must be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered,'" quoting *Nissho-Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1307 (5th Cir.1988). As here, the nonmovant in *Frito-Lay* had submitted a statement of material facts in dispute in token compliance with Rule 56 and the local rule. But the statement made no reference to the evidence, a defect we held "fatal" to the opposition to summary judgment. 863 F.2d at 1034.

If we followed *Frito-Lay,* as every panel of the court must, *see LaShawn A. v. Barry,* 87 F.3d 1389, 1395 (D.C.Cir.1996) (en banc), Burke's violation of Rule 56 and Local Rule 56.1 should also have been fatal. The majority claims that *Frito-Lay* does not control this case because it dealt solely with the nonmovant's failure "to introduce Rule 56(c) materials in accordance with the teachings of *Anderson* and *Celotex.*" Maj. op. at 519. There is no such teaching. To be sure, a nonmovant may not defeat a summary judgment motion by resting on mere allegations or pleadings. *See Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. But neither *Anderson* nor *Celotex* requires nonmovants to introduce Rule 56(c) materials in order to avoid summary judgment. Rather, when appropriate, the nonmovant "may simply demonstrate to the court that the record on the motion contains sufficient specific facts to establish the existence of a genuine issue," such as by pointing out to the court that the movant ignored or mischaracterized relevant evidence already in the record. SCHWARZER ET AL., *supra,* at 47; *see also Isquith v. Middle S. Utils., Inc.,* 847 F.2d 186, 198–99 (5th Cir.1988) (holding that a nonmovant responding to a motion for summary judgment need not proffer its own evidence but may point to evidence already on file). Thus, the nonmovant's

mistake in *Frito-Lay* was not in failing to submit Rule 56(c) materials, as the majority supposes. Rather, the nonmovant's mistake—a fatal one—was its failure to point the district court to material facts "with the requisite specificity and [to] support them with appropriate references to the record before the district court." *Frito-Lay*, 863 F.2d at 1034. Burke made the same error and it should have the same consequence.

The majority excuses Burke's failure to point to specific facts and his noncompliance with the local rule on the basis that the district judge could, and did, waive the local rule, by which the majority means that the court did not specifically invoke the rule against Burke. I have several responses. In the first place, the district court had no authority to waive Rule 56. In the second, I do not believe it had the authority to relieve Burke of the local rule. Neither rule is simply for the benefit of the district court, although that is certainly part of it. *See, e.g., Twist v. Meese*, 854 F.2d 1421, 1425 (D.C.Cir.1988) ("[A] district court judge should not be obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make his own analysis and determination of what may, or may not, be a genuine issue of material disputed fact."). The moving party too is entitled to a concise statement of the material facts the opponent thinks are contested. Otherwise, it would be handicapped in trying to meet the opposing contentions. Local Rule 56.1 and "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555. It is true that several cases

such as *Gardels v. CIA*, 637 F.2d 770, 773 (D.C.Cir.1980), say that a district court may ignore the moving party's failure to comply, a point we recently repeated in *Cleveland County Ass'n for Gov't by the People v. Cleveland County Bd. of Comm'rs*, 142 F.3d 468, 475 n. 12 (D.C.Cir. 1998). But these cases did not hold that a district court may excuse a violation by a nonmoving party, on whom the burdens are considerably different. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. To so hold would be to contradict our decision in *Frito-Lay*. Nothing in our description of the district court's opinion in *Frito-Lay* indicated that the district court had invoked the local rule in granting summary judgment, yet we affirmed on the ground that the nonmovant violated Rule 56 and the local rule by failing to provide a statement containing citations to the record.

In any event, the fact that the district court attempted to search the record despite Burke's noncompliance with Local Rule 56.1 should not obscure the reality of this case: it was Burke's inadequate Rule 56.1 statement (not error on the part of the district court) that caused certain facts to go undiscovered. Burke bore the burden of pointing out any material facts to the district court. Having failed to do so, he should not be permitted to make another attempt. *See Tarpley v. Greene*, 684 F.2d 1, 7 n. 16 (D.C.Cir.1982). "Rules is rules," as the saying goes, BARTLETT J. WHITING, MODERN PROVERBS AND PROVERBIAL SAYINGS 541 (1989).

The majority's bewildering treatment of the local rule and Rule 56 will have consequences for litigants, for district court judges and for our court. The majority begins by proclaiming that we have "long upheld strict compliance." In the next breath it propounds an exception, stating that only "egregious" violations of the rule matter. Maj. op. at 517–18. The two

statements cannot stand together. This is not an instance in which the exception proves the rule. The majority's exception destroys the rule. The majority also fails to explain how its new regime will function when a district court simply grants summary judgment without an opinion, as district judges are entitled to do. *See* FED. R.CIV.P. 52(a). In such cases the district court will not have expressly invoked Local Rule 56.1 and thus, according to my colleagues, neither can we, which means that we will have to wade through the record ourselves to determine whether there is evidence to show genuine issues. I side with the Fifth Circuit that it is not our duty to do so. *See Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir.1994); *see also Guarino*, 980 F.2d at 406 ("The free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not."). We review summary judgments *de novo*, placing ourselves in the position of the district court when it decides whether to grant the motion. *See Adler*, 144 F.3d at 671–72; *but see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001). *De novo* review means that the district court's opinion (if it rendered one) drops out. *See Liberty Lobby, Inc. v. Rees*, 852 F.2d 595, 598 (D.C.Cir.1988). To me, it makes no sense to hold, as the majority does, that if the district court disregards Local Rule 56.1, we must do the same. We are not concerned here with a district court ruling admitting or excluding evidence. *Contrast General Electric Co. v. Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512, 517–18, 139 L.Ed.2d 508 (1997). As our opinion in *Frito-Lay* indicates, the local rule represents an interpretation of Rule 56(e)'s requirement that the nonmoving party "set forth specific facts showing that there is a genuine issue for trial." I would therefore hold that if a nonmoving party fails to comply with Rule 56 and Local Rule 56.1, as Burke did in this case, the nonmoving

party loses whenever the movant's submission, considered alone, shows that there is no genuine issue for trial and that it is entitled to judgment as a matter of law.