KAREN LeCRAFT HENDERSON, Circuit Judge,
concurring in the judgment:
I concur in the majority opinion’s disposition and, for the most part, in its reasoning. I disagree, however, with its conclusion that Howard P. Stewart suffered an “adverse employment decision” — a necessary element of an employment discrimination claim — when he was not selected to be Chief of the Environmental Crimes Section in the United States Department of Justice.
In Brown v. Brody, 199 F.3d 446 (D.C.Cir.1999), we announced the “rule” that an employee like Stewart who is simply “denied a lateral transfer — that is, one in which [ ]he suffers no diminution in pay or benefits — does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of [his] employment or [his] future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.” 199 F.3d at 452 (emphasis added). There is no *432 evidence in this record to support a finding of “objectively tangible harm.” Stewart argues, without elaboration, that the Chief job “carried with it significantly elevated supervisory duties and responsibilities,” Appellant’s Br. at 13; see also id. at 14 (Chief position “by its very nature carried tremendous supervisory and managerial responsibilities”); id. at 15 (Stewart “applied for a position that would have given him a more distinguished title and greater supervisory responsibilities”); cf. 211 F.Supp.2d at 174 (“plaintiff asserts that these losses stem directly from the defendant’s failure to promote him to a position that carries ‘significantly elevated duties and responsibilities’ ”) (record citation omitted). He fails to explain, however, how the responsibilities are “elevated” over his own. His bare allegations may reflect Stewart’s “own subjective interest” in the position of Chief. See 211 F.Supp.2d at 175. They do not support a finding of objectively tangible harm.[1]
As evidence that Stewart’s position was subordinate to the Section Chiefs, the majority opinion states that Chief Uhlmann “testified that as Chief he assigned duties to Stewart ‘including specific management duties, and other initiatives.’ ” Maj. Op. at 427 (quoting Uhlmann Dep. at 24). Uhl-mann testified that during his tenure Stewart “ha[d] continued to serve as ... the reviewing official for [the Section’s] legal support staff,” as he had done before Uhlmann became Chief. Id. Uhlmann further stated he had asked Stewart “to meet with all the trial teams in the section after cases were charged, to work with their assistant chiefs, and to work with them on formulating trial strategy,” and “to participate in every management meeting.” Id. at 24-25. To me, this testimony does not reflect the kind of supervisory hierarchy that the majority opinion suggests.[2]
In pressing his claim of adverse employment action, Stewart relies heavily on Burke v. Gould, 286 F.3d 513 (D.C.Cir.2002), in which the court concluded a government employee suffered an adverse employment action when he “was relieved of his supervisory responsibilities as section chief and assigned to unspecified duties.” 286 F.3d at 516. To lose supervisory authority through a job change is a far cry from failing to acquire different supervisory authority through nonselection. It is undisputed that Stewart has long exercised supervisory responsibilities over junior lawyers in his current position. See 211 F.Supp.2d at 175 (“plaintiff himself acknowledges that in his current position as Senior Litigation Counsel, he has had years of experience supervising other attorneys”). These responsibilities may be different in kind from those attendant upon the Chiefs position but such differences as exist do not negate the fact that Stewart’s current position entails supervisory responsibility or make the position inferior to the Chiefs.
*433 In sum, while I agree with the majority opinion that no reasonable juror could find the defendant’s legitimate, nondiscriminatory reason for not selecting Stewart in 2000 was pretextual, I do not believe we need reach pretext. I would affirm the summary judgment with regard to Stewart’s non-selection in 2000 on the ground that Stewart failed at the prima facie stage to show that he suffered an adverse employment action. In all other respects, I concur in the majority opinion.

. Stewart's complaint alleged in addition that he suffered "damage to his career and to his professional and personal reputation, embarrassment, humiliation, and emotional pain.” Compl. ¶ 14. These intangible harms are plainly not actionable. See Stewart v. Evans, 275 F.3d 1126, 1136 (D.C.Cir.2002) ("public humiliation or loss of reputation does not constitute an adverse employment action under Title VII”).

. I ascribe little weight to the conclusionary support the majority cites for the proposition that the Chief was Stewart's supervisor, see Maj. Op. at 427 & n.l, namely the government's non-record "hierarchy” comments at oral argument and Stewart's own, self-serving characterization of the Chief as his "supervisor,” see also Schiffer Dep. at 165-66 (also calling Chief Stewart’s "supervisor”). They tell us nothing specific about the relationship between the Chief's position and Stewart’s.