**Madhuker D. OHAL, Appellant,**

v.

**BOARD OF TRUSTEES OF THE UNI-
VERSITY OF THE DISTRICT OF
COLUMBIA, Appellee.**

No. 03–7098.

United States Court of Appeals,
District of Columbia Circuit.

June 4, 2004.

David H. Shapiro, Swick & Shapiro,
Washington, DC, for Plaintiff–Appellant.

Robin Alexander, Washington, DC, for
Intervenor Defendant–Appellee.

Before RANDOLPH, TATEL, and
GARLAND, Circuit Judges.

*JUDGMENT*

PER CURIAM.

Upon consideration of the record from
the United States District Court for the
District of Columbia and the parties' briefs
and arguments, it is

ORDERED AND ADJUDGED that the
district court's refusal to hold appellee in
contempt be affirmed, that the district
court's dismissal of appellant's retaliation
claim be reversed, and that the case be
remanded to the district court for further
proceedings.

In 1997, appellant Madhuker Ohal sued
his employer, appellee the University of
the District of Columbia (UDC), charging
that UDC had discriminated and retaliated
against him because of his national origin
in violation of Title VII. A jury found that

UDC had not only discriminated against Ohal by refusing to promote him to a relatively senior administrative position, but also retaliated against him for his earlier discrimination complaints. The district court awarded Ohal front and backpay and directed UDC to place him in a position "equivalent" to one for which he had applied.

Ohal subsequently filed this action, seeking to hold UDC in contempt for failing to comply with the court's order to give him an equivalent job and contending that university officials had unlawfully retaliated against him for his first victory by gradually eroding the power and perquisites of the job it did give him. The gist of the retaliation claim is that after Ohal was reinstated, university officials—and in particular his supervisor, LaVerne Blagmon–Earl—took steps to reduce his supervisory authority. The complaint alleges that: a secretary who worked for Ohal's predecessor and was transferred to Blagmon–Earl's office prior to Ohal's reinstatement was not replaced; a career counselor who retired in 2000 was not replaced; Blagmon–Earl not only unilaterally decided to fire a contract employee who served Ohal and his predecessors for five years, but also transferred the program that the employee oversaw to her office; Blagmon–Earl assigned tasks to Ohal's subordinates without informing or consulting him, and sometimes signed their leave slips even when Ohal was present to do so; and other employees were transferred from Ohal's office to Blagmon–Earl's.

The district court dismissed Ohal's retaliation claim pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, concluding that Ohal's allegations revealed that he had not suffered the requisite "adverse employment action." The court subsequently refused to hold UDC in contempt, finding that the job the university had given Ohal was "comparable" to the one for which he had applied.

■ As to the retaliation claim, we think it clear that UDC's reduction of Ohal's supervisory responsibilities after reinstating him, if true (and for purposes of the motion to dismiss we assume the truth of the allegations, see, e.g., Warren v. District of Columbia, 353 F.3d 36, 39 (D.C.Cir. 2004)), constitutes an adverse employment action. In Burke v. Gould, 286 F.3d 513 (D.C.Cir.2002), we stated that "we have no doubt that the removal of Burke's supervisory responsibilities constituted an adverse employment action." Id. at 522. And in Stewart v. Ashcroft, 352 F.3d 422 (D.C.Cir. 2003), we made clear that a material reduction of supervisory responsibilities, no less than a total deprivation of such responsibilities, can amount to an adverse employment action. See id. at 427 ("Just as withdrawing an employee's supervisory duties constitutes an adverse employment action, so too failing to select an employee for a position with substantially greater supervisory authority is an adverse employment action." (citation omitted)); see also Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993), quoted in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." (emphasis added)).

Brown v. Brody, 199 F.3d 446 (D.C.Cir. 1999), is not to the contrary. There we stated only that lateral transfers, i.e., those involving no change in salary or benefits, do not constitute adverse employment actions "unless there are some other materi-

ally adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Id.* at 457. That we ultimately found no such "other materially adverse consequences" in *Brown* does not preclude their presence in this case. We of course express no opinion on whether there were such consequences here, or on whether—if there were—the university can show that it had a legitimate non-discriminatory explanation for its actions. We merely conclude that Ohal's allegations suffice to survive a motion to dismiss.

█ Turning to the contempt issue, we begin by noting Ohal's heavy burden. Not only does a contempt finding require clear and convincing evidence of contempt, *see, e.g., Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1477 (D.C.Cir.1995), but we review the district court's contempt ruling only for abuse of discretion, *see, e.g., Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1016 (D.C.Cir.1997). Ohal must therefore show that the district court's conclusion that the available evidence of contempt fell short of the clear and convincing standard was an abuse of discretion.

Ohal has not carried this exacting burden. The district court found that the position into which UDC placed Ohal was "comparable" to the one for which he had applied. Ohal complains that "comparable" is not the same as "equivalent"—the word the district court used in its earlier order—but while it is true that the two words can have different meanings, they can also have the same meaning. *See, e.g., Webster's Third New International Dictionary* 461 (1993) (listing "equivalent" as a synonym for "comparable"). Ohal offers no reason why it was nonetheless an abuse

of discretion for the district court to interpret the word "equivalent" in its own prior order as meaning "comparable." Indeed, Ohal's complaint itself repeatedly uses the word "comparable" when discussing compliance with the court's order. *See* Compl. ¶ 14, *reprinted in* J.A. at 13 ("[T]he position of Director of Student Affairs was a comparable position to the Director of CASS, into which Dr. Ohal could have been placed by UDC in compliance with the July 1999 court order."); *id.* ("[W]hat had been a comparable position to CASS ... was materially divided into smaller elements.... Therefore, UDC changed its organizational structure from one that would have accommodated Dr. Ohal's reinstatement to a position (comparable to the CASS Directorship) that complied with the July 1999 court order to one ... significantly smaller...."). Ohal argues that the position he was given and the one for which he applied were not even comparable, but we think the district court was within its discretion to find otherwise. We therefore decline to overturn the court's refusal to hold UDC in contempt.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. R. 41(b); D.C.Cir. Rule 41.