James WASHINGTON, Plaintiff,

v.

Thomas E. WHITE, Defendant.

No. CIV.A. 01–0420RBW.

United States District Court,
District of Columbia.

Oct. 22, 2002.

James Washington, Washington, DC, pro se.

Thomas M. Ray, Department of the Army, Joel E. Wilson, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

WALTON, District Judge.

Plaintiff has sued the defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging that he was subjected to a hostile work environment resulting from sexual harassment and retaliation. Defendant[1] has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or alternatively for summary judgment pursuant to Fed.R.Civ.P. 56. This motion must be denied.

### I. The Complaint

Plaintiff's complaint is in the form of a memorandum presented to the Equal Employment Opportunity Commission ("EEOC") as his appeal from the agency's adoption of a decision against him rendered by an administrative law judge. The following facts are alleged in the complaint and are based on exhibits submitted to the administrative law judge, including testimony taken at depositions.

Plaintiff is a custodial worker at the Walter Reed Army Medical Center. He used the second floor men's locker room to remove his uniforms and put on his street clothes at the end of every shift. Plaintiff asserts that in May 1997, Francine Aparicio, who holds a supervisory position at the medical center, "for no apparent reason" "barged into the room five to ten times without knocking or announcing herself." Compl. at 2–3. Plaintiff alleges that the locker room was so small that Aparicio

would be standing a few feet away from the lockers, changing areas, and sinks, and would be able to see the place where the men undressed. Once, he asserts, she came in as he took his shirt off. *Id.* at 3. Although Plaintiff complained to his supervisor and to Lawrence Winston, the Chief of the Environmental Services Branch ("ESB"), Aparicio continued her visits. *Id.* Another time, after plaintiff had filed a written complaint, Aparicio entered the locker room, went over to plaintiff, and (without asking) reached in and took a pen out of his shirt pocket. *Id.* Plaintiff complained again to his supervisor. Aparicio then received a written warning but when she complained to Winston and then to the Deputy Head of Administration, the latter called Winston with his concern that Aparicio, "a union officer, might have been undeservedly reprimanded." *Id.* Aparicio then "returned to the locker room and stood over [plaintiff] saying 'I'm back. What are you going to do about it?'" *Id.* Washington then complained to Winston's direct superior, who, based on Winston's "general past practices," probably discussed the matter with Winston, but apparently nothing was done to address the situation. *Id.* at 3–4.

Plaintiff alleges that because of Aparicio's "repeated, unabated intrusions" he was "embarrassed and uncomfortable and chose to change in bathrooms and vacant areas on other floors." Compl. at 4. He alleges that Aparicio's intrusion into the men's locker room violated a policy signed in April 1995, which "required a chaperon for persons entering locker rooms of the opposite sex." *Id.* The policy was adopted after "a female custodial worker accused Winston of sexually harass[ing]

---

1. The current Secretary of the Army, Thomas E. White, has been substituted for his prede-

cessor by operation of law and pursuant to Fed.R.Civ.P. 25(d)(1).

her by entering the women's locker room without knocking." *Id.* That policy was neither posted nor placed in training materials, although Winston had been counseled about it. *Id.*

Plaintiff further alleges that Ms. Aparicio received two promotions after he lodged his sexual harassment complaint against her. *Id.* at 4–5. Plaintiff, on the other hand, received two leave restrictions and an unsatisfactory rating. *Id.* at 4. Plaintiff suggests the first leave restriction, in February 1998, was imposed in retaliation for the sexual harassment complaint he had filed. *Id.* at 5–6, 8–9.[2] After plaintiff filed a reprisal complaint relating to the leave restriction, Winston declined to exercise his discretion to excuse plaintiff's absence from certain training courses, which had been held at a time when plaintiff was sick.[3] Winston then approved an unsatisfactory rating because plaintiff had missed the training. *Id.* at 7. Four months later, in July 1998, after an EEO investigator "pointed out a number of procedural errors," Winston removed the leave restriction. *Id.* at 7–8. Less than a month later, however, Ms. Aparicio, who had been promoted to an assistant supervisor position, signed a new warning letter that alleged leave abuse by plaintiff, and a second leave restriction followed less than 60 days later. *Id.* at 8.

## II. The Defendant's Motion to Dismiss

Defendant's motion to dismiss is based on two grounds: first, that the complaint fails to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure, and

second, that the claim is barred by the statute of limitations.

### A. Compliance with Rule 8

Defendant first argues that the complaint should be dismissed because it is simply a copy of a motion for reconsideration filed with the EEOC and does not comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a) provides that a complaint should contain

(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for judgment for the relief the pleader seeks.

■ This complaint was filed by plaintiff without the assistance of counsel. Such complaints are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Moreover, Rule 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." The complaint certainly is sufficient to inform defendant of the claims alleged. Indeed, defendant has been able to prepare a motion for summary judgment addressing the merits of the claims. As plaintiff notes in his sur-reply,[4] dismissal of the complaint for alleged violations of Rule 8 would simply delay resolution of the matter, because the dismissal would have to be without prejudice and plaintiff therefore would be

---

**2.** Plaintiff contends that the leave restriction was unwarranted because his absences had been for legitimate medical reasons. *Id.* at 5–6.

**3.** Plaintiff's immediate supervisor had not advised him of the make up dates for the training. *Id.* at 7.

**4.** The Court will grant plaintiff's motion for leave to file the sur-reply, which plaintiff states he prepared with volunteer legal assistance.

allowed to file an amended complaint. Accordingly, the complaint will not be dismissed for non-compliance with Rule 8.

## B. The Statute of Limitations

Defendant next argues that the complaint must be dismissed because it was filed more than ninety days after plaintiff's receipt of the right to sue letter from the Equal Employment Opportunity Commission ("EEOC"), in violation of 42 U.S.C. § 2000e–5(f)(1). The facts, as shown by the Court files, are these. The EEOC right to sue letter was mailed to plaintiff on October 31, 2000. Defendant's Motion to Dismiss ("Def.'s Mot."), Exhibit ("Ex.") F. Plaintiff submitted his complaint to this Court on January 30, 2001, with a petition for leave to proceed *in forma pauperis.* The Court's copies of these documents bear a stamp showing that they were received by the Clerk on January 30, 2001. (Dkt. ## 1, 2). The Clerk of the Court will not accept for filing a complaint that is not accompanied by a filing fee until after the Court has granted a petition for leave to proceed *in forma pauperis.* The application to proceed *in forma pauperis* was granted on February 26, 2001, and the complaint was then accepted by the Clerk as filed the next day (February 27, 2001).

As indicated, plaintiff had ninety days from the date he received the final decision of the EEOC to file suit in this Court. The certificate of mailing attached to the EEOC's denial of request for reconsideration states that "the Commission will presume that [its] decision was received within five (5) calendar days after it was mailed." (Dkt.# 4.) The presumption, therefore, is that plaintiff received the decision by November 5, 2000. The ninetieth day from this presumptive date was February 3, 2001. The complaint was therefore technically filed 114 days after plaintiff is presumed to have received the

decision, or 24 days beyond the statutory filing deadline.

■ The ninety day period is not a jurisdictional statute but rather is a statute of limitations and thus subject to equitable tolling. *See Smith–Haynie v. District of Columbia,* 155 F.3d 575 (D.C.Cir.1998); *Truitt v. County of Wayne,* 148 F.3d 644 (6th Cir.1998). There is a substantial body of case law holding that the ninety day period is tolled between the time a complaint and an application to proceed *in forma pauperis* are received by the Court, and the time the Court rules on the application. *See, e.g., Warren v. Department of the Army,* 867 F.2d 1156, 1160 (8th Cir. 1989) (statute of limitations is equitably tolled between submission of application to proceed *in forma pauperis* and formal filing of complaint); *Paulk v. Department of the Air Force,* 830 F.2d 79, 82–83 (7th Cir.1987) (to bar an action that was submitted for filing *in forma pauperis* within the statute of limitations but decided beyond the deadline would "violate equal protection because similar claims would be treated drastically differently only on the basis of the speed with which the court chose to process them"); *Hogue v. Roach,* 967 F.Supp. 7, 9 (D.D.C.1997); *Guillen v. National Grange,* 955 F.Supp. 144, 145 (D.D.C.1997); *Harley v. Dalton,* 896 F.Supp. 29 (D.D.C.1995); *Yelverton v. Blue Bell, Inc.,* 530 F.Supp. 701 (E.D.N.C. 1982); *Abram v. Wackenhut Corp.,* 493 F.Supp. 1090 (E.D.Mich.1980).

■ The cases defendant cites in support of his position that this case should be dismissed on statute of limitation grounds did not involve a delay caused by the Court's administrative procedures. *See Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 92, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (describing as a "garden variety claim of excusable neglect" the fact that the lawyer was absent from his office when

the decision was received); *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196, *reh'g denied,* 467 U.S. 1231, 104 S.Ct. 2691, 81 L.Ed.2d 885 (1984) (plaintiff filed only the right to sue letter, not a complaint); *Saltz v. Lehman,* 672 F.2d 207, 209 (D.C.Cir. 1982) (no excuse given for late filing); *Mondy v. Secretary of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988) (statute tolled); *Smith v. Dalton,* 971 F.Supp. 1 (D.D.C. 1997) (no excuse given). These cases are therefore not authority for the dismissal of the complaint in this case. Defendant has not asserted that he was inconvenienced or that his ability to defend on the merits was adversely affected by the delay.[5] Further, the Court concludes that the plaintiff acted diligently in pursuing this matter in this Court. Accordingly, defendant's motion to dismiss this action on statute of limitations grounds is denied.

## III.  The Motion for Summary Judgment

### A.  Defendant's declarations

Defendant contends that plaintiff cannot establish a prima facie case either of a hostile work environment caused by sexual harassment or of retaliation. In addition, defendant argues that plaintiff has failed to show that defendant's alleged legitimate, nondiscriminatory reasons for his actions were pretextual. In support of his motion, he offers a Report of Investigation prepared by an in-house investigator and dated July 9, 1998, Def.'s Mot., Exs. A, B, the findings of the EEOC Administrative Law Judge issued on February 10, 1999, *id.,* Ex. C, the Department of the Army's final decision on plaintiff's administrative complaint dated February 24, 1999, *id.,* Ex. D, the March 2, 2000, decision of the

EEOC, *id.,* Ex. E, and the EEOC's denial of the request for reconsideration that was issued on October 31, 2000, *id.,* Ex. F. Defendant has also presented two declarations, one from Lawrence Winston, *id.,* Ex. G, and the second from Leon Jackson, a custodial work supervisor at the hospital, *id.,* Ex. H.

Mr. Winston states that plaintiff has been employed at Walter Reed since 1993. During the time involved in the complaint, plaintiff was assigned to the third shift, working from 10:30 p.m. until 7:15 a.m. Ms. Aparicio was assigned to the shift that began at 7:15 a.m. During the transition between shifts, third shift employees turn in their uniforms and sign out, and first shift employees pick up their uniforms and sign in. *Id.,* Ex. G (Winston Decl. ¶¶ 1, 2).

Winston states that there is a "combination locker room and break area" on the second floor of the main building "adjacent to the ESB's administrative offices." *Id.* ¶ 3. He describes the break area as being furnished with tables, chairs, and a microwave oven for both male and female employees to use during breaks. He states that this area was used by both male and female employees to sign in for and out after work and also served as a "quasi business/administrative area because in addition to having employees sign in and out there, management also posted information in this area." *Id.*

After plaintiff complained about Ms. Aparicio's "presence in the break area" and because the male latrine and locker room are near the break area, Winston counseled Ms. Aparicio and "instructed" her to knock before entering. "Within the same month," Winston continued, plaintiff

---

5.  Defendant does not object to the delay resulting from the fact that the case was stayed for six months after it was filed, pending receipt of a right to sue letter. [Dkt. # 3]. The stay was lifted by order signed August 24, 2001, and a summons was issued thereafter. [Dkt. # 5.]

again complained that Ms. Aparicio had entered the break area, and this time that she had removed a pen from his shirt pocket. Winston Decl. ¶ 4. Winston then "conducted an informal investigation" and "developed a policy that in addition to knocking before entering, females must receive permission from the on-duty supervisor before using the break area." *Id.* He also had a letter announcing this policy posted on the door to the area. Finally, he moved the sign-in and sign-out area from the break area to the administrative offices. He states that "[n]one of the other male or female custodians who used the break area had ever had any complaints." *Id.*

Winston contends, without further explanation, that plaintiff and Ms. Aparicio "had some personal disagreements unrelated" to the complaints about the break area, which may have "precipitated his complaints." Winston Decl. ¶ 5. Winston viewed the complaints as "a minor coworker difference or common workplace inconvenience." *Id.*

With respect to the leave restriction that was placed on plaintiff by Leon Jackson, Winston states that he concluded that the action was "necessary" because of "the significant amount of unscheduled absences that Mr. Washington had." Winston Decl. ¶ 6. Because his policy had been "to first warn employees about their unscheduled absences and their impact on mission accomplishment before issuing a leave restriction letter," Winston rescinded the letter. *Id.* Ultimately, however, plaintiff was placed on leave restriction by the Fourth Floor Supervisor, Michael Ward, "because he continued to have significant amounts of unscheduled absences." *Id.*

Leon Jackson, the supervisor who imposed the rescinded leave restriction, has been a Custodial Work Supervisor in the ESB since 1996. When he became plaintiff's first level supervisor in November 1997, he noted that plaintiff's file contained documents indicating that plaintiff "had poor work attendance and took an excessive amount of sick and annual leave." Jackson Decl. ¶¶ 1, 2. Plaintiff's previous supervisor had issued a letter of warning in September 1997, indicating that the record suggested leave abuse and that the situation would be reviewed in 60 days to determine whether plaintiff's leave should be restricted. Jackson Decl. ¶ 2.[6] Plaintiff was out of work for several weeks at the time Jackson took over as his supervisor. When he returned, they discussed the leave issue, Jackson "counseled" plaintiff and "explained that if there was no improvement in his leave usage" he would be put on leave restriction. *Id.* Thereafter, plaintiff then was absent "on sick leave for a long period of time." When plaintiff returned in February 1998, Jackson concluded that because plaintiff "took too much leave and was not maintaining a regular work schedule" he should be placed on leave restriction. Jackson Decl. ¶ 3. Leave restriction is designed to make sure that the employee only takes leave "for recognized legitimate purposes" and "cautiously" so that it will be available for an "unexpected illness or injury." *Id.* Jackson specifically denies having imposed the restriction in retaliation for prior EEO activity, and states that he "was not aware of any prior EEO activity by" plaintiff at the time he issued the restriction. Jackson Decl. ¶ 4. Neither Winston nor Jackson is aware of any discrimination against

---

**6.** This occurred four months after plaintiff's complaint about Ms. Aparicio, which was made in May 1997.

plaintiff. Winston Decl. ¶ 7; Jackson Decl. ¶ 5.

### B. Plaintiff's Opposition

In opposition to the motion for summary judgment,[7] plaintiff has provided a list of 14 material facts that he contends are in dispute. First, he challenges the description of the changing room as a "break room," noting that it contained lockers, shower stalls, and a rest room with urinals. Although there was a microwave oven, a small refrigerator, and a table in the men's locker room, similar equipment was also available in the women's locker room. *Opposition* at 2, ¶ A.

Next, plaintiff contends that a specific policy addressing the separate male and female locker rooms had been instituted in 1995. This policy required that females entering the male locker room be chaperoned by a supervisor. The policy had been formally adopted after a complaint was lodged against Lawrence Winston for entering the women's locker room. Thus, plaintiff asserts that Winston is incorrect when he states that he developed the policy in response to plaintiff's complaint about Ms. Aparicio. *Opposition* at 2–3, ¶¶ B, C, J, K, M. Moreover, plaintiff denies that Winston posted the "new policy" on the male locker room door; rather, plaintiff posted it." *Opposition* at 2, ¶ K.

Significantly, plaintiff has provided to the Court a copy of a memorandum dated April 25, 1995, addressed to the female worker who had complained about Winston's invasion of the women's locker room, and a copy of the written policy from 1995 stating that employees must be accompanied by a chaperone when entering the locker room of the other sex, after everyone inside "has acknowledged a visitor of the opposite sex is about to" enter the room. These documents, the genuineness of which defendant has not challenged, directly contradict Winston's statement that he formulated that policy in response to plaintiff's complaint about Ms. Aparicio.

Plaintiff also contends that it was "common knowledge that the locker room was not [open to] both sexes." *Opposition* at 2, ¶¶ D, E. Plaintiff states that the male locker room was not "a 'quasi-business administrative area,'" that "most if not all information was convey[ed] thru circulated memorandums and staff meeting," and that in any event there "was a bulletin board in the female locker room." *Opposition* at 2, ¶ I. Moreover, he states that "Ms. Aparicio knew full well this was a time when men would be getting off from work and would be changing" and could have asked that someone bring her the sign-in sheet. *Opposition* at 2, ¶¶ F, G.

As to his retaliation claim, plaintiff states as a material fact that Ms. Aparicio was promoted and as a result of the promotion became his supervisor. *Opposition* at 3, ¶ L. Plaintiff further states that he had doctor's slips justifying his absences as the result of illness. *Opposition* at 3, ¶ N.

Plaintiff has submitted with his opposition a statement by two co-workers corroborating his contention that the male locker room was not a unisex break room. He also submitted a "Letter of Counseling" to Ms. Aparicio dated May 15, 1997, from Chris Brown, who apparently was a supervisor. In the letter, Brown states that he had been "informed by several of the male employees that [Ms. Aparicio was] constantly entering the male lockerroom unannounced (sic) while they are undressing." Although Brown had instructed Ms. Aparicio not to enter the room without first

---

7. Plaintiff's opposition, entitled "Plaintiff Request for Denial of Defendant's Motion to Dismiss and Summary Judgment," will be cited as "Opposition."

knocking and announcing herself, she had failed to comply and was advised that "further disciplinary action" would be taken unless she stopped "this type of behavior."

### C. Discussion

A motion for summary judgment should be granted if the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994). In considering whether there is a triable issue of fact, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248, 106 S.Ct. 2505. The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly*, 963 F.2d 453, 456 (D.C.Cir.1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir.

1982)). The mere existence of a factual dispute by itself, however, is not enough to bar summary judgment. The party opposing the motion must show that there is a genuine issue of *material* fact. *See Anderson v. Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. 2505. To be material, the fact must be capable of affecting the outcome of the litigation; to be genuine, the issue must be supported by admissible evidence sufficient for a reasonable trier-of-fact to find in favor of the non-moving party. *See Anderson v. Liberty Lobby*; *Laningham v. United States Navy*, 813 F.2d 1236, 1242–43 (D.C.Cir.1987).

Preliminarily, defendant argues that the Court should accept his statement of material facts as the uncontroverted facts of the case. He bases this argument on Local Civil Rule 7.1(h), which authorizes the court "to assume the facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." [8] However, plaintiff is a layman who prepared his opposition to the motion himself. Therefore, the Court "does not abuse its discretion by declining to invoke the requirements of the local rule in ruling on a motion for summary judgment." *See Burke v. Gould*, 286 F.3d 513, 518 (D.C.Cir.2002). [9] Moreover, although defendant objects that plaintiff has not provided record references for each of the facts that he contests, there has been no discovery yet and the submissions of the parties on the motion are not extensive. Accordingly, the Court will not accept as

---

**8.** The same provision appears in Local Civil Rule 56.1.

**9.** In *Burke*, the Court pointed out that "[t]he plain language of Local Rule 56.1 does not require the district court to enter judgment because of the nonmoving party's default in complying with the local rule. It provides

that the district court 'may assume the facts identified by the moving party in its statement of material facts are admitted' (emphasis added) in the absence of a statement of genuine issues filed in opposition to the motion for summary judgment." *Burke*, 286 F.3d at 518 (quoting from Local Rule 56.1).

true each and every material fact identified by defendant simply because plaintiff either may not have contradicted each fact listed by defendant in his statement of facts and may not have provided specific references to the record as it exists at this time.

In order to prevail in a case under Title VII, the plaintiff initially must establish a *prima facie* case of prohibited discrimination or retaliation. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the plaintiff succeeds in making out a *prima facie* case, the burden of production shifts to the defendant to articulate some legitimate, non-discriminatory or non-retaliatory reason for the challenged action. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green.* Once the defendant articulates a sufficient reason, the presumption raised by the *prima facie* case is rebutted, and the burden shifts back to the plaintiff to produce some evidence, either direct or circumstantial, to show that the defendant's proffered reason for its actions is a mere pretext for discrimination or retaliation. *See McDonnell Douglas v. Green,* 411 U.S. at 802–05, 93 S.Ct. 1817; *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 255, 101 S.Ct. 1089; *Batson v. Powell,* 912 F.Supp. 565, 577–78 (D.D.C.1996), *aff'd,* 203 F.3d 51, 1999 WL 1337765 (D.C.Cir.1999). Summary judgment in such a case "is appropriate where either the evidence is insufficient to establish a *prima facie* case, ... or, assuming a *prima facie* case, there is no genuine issue of material fact that

the defendant's articulated non-discriminatory [or non-retaliatory] reason for the challenged decision is pretextual." *Paul v. Federal Nat'l Mortgage Ass'n,* 697 F.Supp. 547, 553 (D.D.C.1988); *see, e.g., Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1288 (D.C.Cir.1998)(*en banc* ); *Beckwith v. Career Blazers Learning Center,* 946 F.Supp. 1035, 1043–44 (D.D.C.1996). In evaluating the evidence, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case .... " *Aka v. Washington Hosp. Ctr.,* 156 F.3d at 1291.

██ To support a claim that he was subjected to a hostile work environment, a plaintiff must show that the "workplace [was] permeated with 'discriminatory intimidation, ridicule, and insult' ... that [was] 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). This showing depends on "all the circumstances", including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367.

██ Here, plaintiff claims that a female work leader on five to ten occasions entered the men's locker room at a time when he and other shift workers would be changing their clothes and perhaps showering.[10] He states that when he complained, the woman returned to the locker

---

10. In plaintiff's opposition to defendant's motion, he states that the room in question contained shower stalls. *Opposition,* at 2.

room and took a pen out of his shirt pocket. Plaintiff filed a written complaint which resulted in a written warning to the woman. She, in turn, complained to her superiors and then returned to the men's room, accosted plaintiff, and suggested, in essence, that his complaints would be ignored. Plaintiff has submitted a written policy prohibiting women from entering the men's locker room without a chaperon, and corroborating statements from coworkers. This evidence is sufficient to establish that Ms. Aparicio's conduct turned his workplace into a hostile work environment, which precludes the Court from entering summary judgment for defendant.

■ Title VII prohibits retaliation against any employee because "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a), A *prima facie* case alleging retaliation under Title VII is established when the plaintiff demonstrates "(1) that [he] engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action against him; and (3) that a causal connection existed between [the protected activity and the adverse action]." *Barnes v. Small,* 840 F.2d 972, 976 (D.C.Cir.1988). The filing of the sexual harassment complaint against Ms. Aparicio was a protected activity. It is undisputed that an unjustified leave restriction was imposed on plaintiff after he complained about Ms. Aparicio, that Ms. Aparicio became his supervisor and issued a warning about plaintiff taking leave, and that Winston later approved an unsatisfactory rating for him.

■ Defendant contends that a leave restriction is not an adverse personnel action. An adverse personnel action is one that results in "objectively tangible harm." *Brown v. Brody,* 199 F.3d 446, 457 (D.C.Cir.1999). The record at this time does not contain evidence from which the Court can conclude that plaintiff did not suffer "objectively tangible harm" from the leave restriction and unsatisfactory rating. A leave restriction presumably limits the circumstances under which an employee may take leave that has been earned, and might be considered an adverse personnel action insofar as it restricts plaintiff's ability to take leave to which he would otherwise be entitled.[11] Moreover, the unsatisfactory rating approved by Winston may well have affected plaintiff's pay or opportunity for promotion.

■ A causal connection between the protected activity and the adverse action sufficient to raise a *prima facie* case can be established by "showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985). Defendant contends that the first leave restriction was imposed by the new supervisor, Leon Jackson, who states that he did not know of plaintiff's complaint about Ms. Aparicio. That leave restriction, however, was later vacated because it had not been imposed in compliance with applicable regulations. If this was all that was in the record, defendant's challenge to plaintiff's retaliation claim would have merit. However, shortly after the first leave restriction was rescinded, Ms. Aparicio, the subject of plaintiff's complaint, issued a warning about plaintiff's leave, and Lawrence Winston,

---

11. The record does not contain details of plaintiff's leave record or the restriction

placed on his ability to take leave.

82

who was quite familiar with plaintiff's complaint, gave him an unsatisfactory rating. The Court therefore finds that plaintiff has made out a *prima facie* case of retaliation.

In denying defendant's motion for summary judgment, it is noted that the motion was filed before any discovery had been conducted. While summary judgment can properly be granted at this stage of the proceedings in some cases, this is not one of those cases. Employment discrimination cases tend to deal with elusive concepts of motive and intent. Thus, it is often difficult for a plaintiff to offer direct proof of an employer's discrimination. For that reason, summary disposition of Title VII cases is not favored and the court "must be extra-careful to view all the evidence in the light most favorable" to the plaintiff. *Ross v. Runyon*, 859 F.Supp. 15, 21–22 (D.D.C.1994), *aff'd per curiam*, No. 95–5080, 1995 WL 791567 (D.C.Cir. Dec. 7, 1995). This case will be in that posture, at the earliest, when discovery is completed.

Plaintiff has filed a request for a court order reinstating a complaint he filed with the Walter Reed Army Medical Center EEO office in October 2001. Defendant has responded, noting that the EEO office has conceded that it erred in closing the complaint and has reopened the complaint. Plaintiff's request will therefore be denied as moot.

An appropriate order signed this day accompanies this Memorandum Opinion.

### *ORDER*

Accordingly, it is by the Court this 21st day of October, 2002,

**ORDERED** that Defendant's motion to dismiss [Dkt. # 8–1] is **DENIED**; it is

**FURTHER ORDERED** that Defendant's motion for summary judgment [Dkt. # 8–1] is **DENIED**; it is

**FURTHER ORDERED** that plaintiff's motion for leave to file a sur-reply is **GRANTED**; it is

**FURTHER ORDERED** that plaintiff's motion for an order reinstating his complaint at Walter Reed's Equal Employment Opportunity Office [Dkt. # 15–1] is **DENIED as moot**;

**FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Dkt. # 11–1] is **GRANTED**; the Clerk is directed to appoint counsel for plaintiff from the Civil Pro Bono Panel of the Court; it is

**FURTHER ORDERED** that defendant shall file an answer to the complaint within 20 days of the date of this order.