**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MURIELENE GORDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 05-1907 (EGS) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Murielene Gordon brings this action against the District of Columbia ("the District") for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., the Rehabilitation Act ("RA"), 29 U.S.C. § 794, and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq*., alleging that the District failed to accommodate her disability while she was employed by the District as an art teacher. Currently pending before the Court are defendant's motion for summary judgment and plaintiff's motion for partial summary judgment. Upon consideration of the motions, and responses and replies thereto, the applicable law, and the entire record, this Court **GRANTS IN PART** defendant's motion for summary judgment with respect to the statutes of limitations

1

under the ADA and DCHRA and **DENIES** plaintiff's cross-motion for partial summary judgment.

## I.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating an absence of genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  In considering whether there is a triable issue of fact, the court must draw all reasonable inferences in favor of the non-moving party.  *Tao*, 27 F.3d at 638.

## II.  BACKGROUND

Murielene Gordon was employed by the District as a teacher from 1979 until her retirement in 2006.  Beginning in 1990, she was employed as an art teacher at Ballou Senior High School.  Plaintiff has degenerative arthritis, which affects her mobility and manual dexterity.  She alleges that while at Ballou, she did not have access to an accessible bathroom, she did not have keys

2

to locked emergency doors, the heating and cooling system was non-functional, the shelves were too high, she did not have access to a copier, and mandatory meetings were held on the second floor of the buildings which she could not access. Compl. ¶¶ 7-8, 11-14.

Plaintiff is able to navigate the stairs into her house, up to her second floor, and down to her basement. *See* Def.'s Mot. Ex. 1 ("Gordon Dep.") at 10-13. Until 2004, she used public transportation to commute to work and was able to walk to and from the bus stop, which were distances up to a city block. Plaintiff was capable of bathing and dressing herself without assistance. *Id.* at 299-304. With respect to her ability to work, plaintiff stated that she maintained her full-time status until retirement and that she was at all times capable of performing her job at a high level despite her arthritis. *See id.* at 88-92.

According to plaintiff, she required the use of a cane to walk in 2002 and 2003, and thereafter required the use of a walker. *See* Pl.'s 2/11/08 Opp'n Ex. 2[1] ("Gordon Aff.") at 1. When she used a cane, it took her at least five minutes to

---

[1] As discussed below, there have been multiple rounds of summary judgment briefing in this case. In the current round of briefing, plaintiff incorporated the exhibits previously filed with the Court. Unless otherwise noted, all citations to court documents in this Memorandum Opinion refer to the most recent round of briefing.

traverse a single flight of stairs. With her walker, it takes at least seven or eight minutes to do so. In either case, traversing staircases causes "extreme pain." *Id*. In 2002 to 2003, plaintiff would go down to the basement in her house at most once a month, and since then does so even more rarely, if ever. The bathroom in her house is located on the second floor. At least since 2003, plaintiff has used a portable toilet so that she does not have to climb the stairs. She also stated that if she ever forgets something upstairs after coming downstairs, she either asks someone else to retrieve it, or does without it. *See* Gordon Dep. at 16.

Plaintiff admitted that she could walk to and from the bus stop until 2004, but explained that she could do so only at a sharply diminished pace. *See* Gordon Dep. at 300. A city block that able-bodied people could walk in less than ten minutes would take plaintiff at least twenty to twenty-five minutes with her cane, and thirty-five to forty minutes with her walker. It would take even longer in inclement weather. During these one-block walks, plaintiff would have to take a break and rest at least once. If sidewalks were icy or slippery, plaintiff could not walk at all and would call in sick to work. *See* Gordon Aff. at 3.

While plaintiff can bathe herself and brush her teeth, both activities cause great pain and take more time than average. For

4

instance, plaintiff cannot brush her teeth for more than one minute without taking a break. *See id.* at 1. Due to pain, plaintiff has not worn makeup since 2000 and cannot style her own hair. *See id.* Since 2001, she has required assistance in order to shampoo her hair. Plaintiff cannot wear clothes or shoes that are fastened with buttons or laces. Finally, plaintiff was limited in her ability to cook, and thus only ate meals that required less than five minutes of preparation or that could be prepared using a microwave oven. *See id.* at 2.

Plaintiff was approved for sick leave in July 2002 for physical therapy relating to her arthritis. *See* Compl. ¶ 16. On August 9, 2002, plaintiff called principal Art Bridges and informed him that she would not return to Ballou for the start of the new school year due to her health problems. *See* Gordon Aff. at 2. According to plaintiff, Bridges told plaintiff to "sit tight," that he was going to transfer her to another school, and that she was a "liability" because she could not run out of the school if there was a fire. *Id.* at 3. According to Bridges, he expected plaintiff to return. *See* Pl.'s 2/11/08 Opp'n Ex. 5 ("Bridges Aff.") at 39.

On September 16, 2002, plaintiff faxed Bridges information that her sick leave bank request had been approved and called Bridges to inquire as to her teacher status, to which Bridges responded that he was going downtown to fill out the transfer

5

forms.  Plaintiff told Bridges that she may not be able to run out of the building in case of a fire, but that if she had a key to unlock the exit doors in her classroom she would not need to run.  Bridges did not respond.  *See* Gordon Aff. at 3.  In November 2002, plaintiff started to make numerous phone calls to Bridges about returning to work and about the status of her transfer, but she was never able to reach him despite leaving messages for him.  *Id.* at 3-4.  On February 26, 2003, plaintiff received a letter from Ballou informing her that she was on absent without leave ("AWOL") status and that she must report to work by March 10, 2003.  Plaintiff did not report to work.  *Id.* at 4.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on April 18, 2003, alleging disability and age discrimination under the ADA and Age Discrimination in Employment Act.  This EEOC complaint followed the filing of an internal discrimination complaint that was dismissed as unsubstantiated.  *See* Pl.'s Opp'n at 3; Pl.'s 2/11/08 Opp'n at Exs. 14, 15.  Also, in March 2003, plaintiff was ordered by the District to undergo a "fitness for duty" examination.  Pl.'s 2/11/08 Opp'n at Ex. 10.  After performing a physical examination, Dr. Samuel J. Scott confirmed that plaintiff suffered from arthritis that "severely affected" her mobility.  *Id.*  Dr. Scott concluded that plaintiff was fit for

6

duty with accommodations that included no standing for more than five minutes at a time, no walking up or down stairs, and no walking more than fifty yards at a time. *Id.*

Plaintiff brought suit in this Court on September 28, 2005, alleging that defendant violated the ADA, the RA, and the DCHRA by failing to accommodate her disability. On August 1, 2006, during discovery, defendant filed a motion for summary judgment, arguing that plaintiff was not disabled under the ADA and that plaintiff failed to show that the District failed to accommodate plaintiff's disability. On March 26, 2007, this Court denied defendant's motion for summary judgment. The parties completed discovery, and on January 11, 2008, defendant renewed its motion for summary judgment on different grounds. On July 16, 2008, this Court denied the motion for summary judgment without prejudice, ordering the parties to address the split among District Court judges regarding the RA's statutory time limitations. On August 14, 2008, defendant again renewed its motion for summary judgment. Plaintiff opposed defendant's motion and, on September 8, 2008, filed her own motion for partial summary judgment.

## III. DISCUSSION

Defendant bases its claim for summary judgment on five grounds: (1) plaintiff's claims are time-barred; (2) plaintiff's accommodation claims under the DCHRA are precluded due to

7

plaintiff's failure to comply with D.C. Code § 12-309; (3) plaintiff failed to plead viable claims under the DCHRA during the period of October 11, 2002, through April 11, 2003; (4) plaintiff has not shown that she is disabled under the ADA, RA, or DCHRA; and (5) plaintiff has not shown that she was discriminated against on the basis of her disability.

## A. Time-Bar

Defendant claims that plaintiff's claims under the ADA, the RA, and the DCHRA are time-barred according to corresponding statutes of limitation and notice rules.

### i. ADA Claims

The ADA does not include its own statute of limitations. Instead, the ADA adopts the procedures set forth in Title VII of the 1964 Civil Rights Act ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, in particular the statute of limitations period set forth in 42 U.S.C. § 2000e-5. *See* 42 U.S.C. § 12117(a) ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides . . . to any person alleging discrimination on the basis of disability in violation of any provision of this chapter."). An administrative complaint must be filed with the EEOC within 180 days of the alleged unfair employment practice. *Id.* § 2000e-5(e)(1). If the complainant has first instituted proceedings

8

with a state or local agency, the limitations period is extended to a maximum of 300 days, or within thirty days after receiving notice that the state or local agency has terminated proceedings under the state or local law, whichever is earlier. *Id.*

Plaintiff simultaneously filed her complaint with the D.C. Office of Human Rights ("DCOHR") and the EEOC "on or about April 18, 2003." *See* Compl. ¶ 19. Plaintiff did not file her complaint with the DCOHR first, so the 300-day extended limitations period is inapplicable. Therefore, plaintiff's claims under the ADA are limited to the 180-day period from October 18, 2002 to April 18, 2003; all other claims are time-barred. Summary judgment is **GRANTED** on this issue.

### ii. RA Claims

Plaintiff makes claims under § 504 of the RA, 29 U.S.C. § 794. *See* Compl. ¶ 1. The RA, like the ADA, does not have an explicitly prescribed statute of limitations period. There is some disagreement in this jurisdiction over which statute of limitations should be used for RA cases: the limitations period used in cases brought under the ADA (which in turn incorporates the Title VII limitations period), or a limitations period "drawn from the appropriate state statute" – in this case, the District's limitations period for personal injury claims. *See Stewart v. District of Columbia*, No. 04-1444, 2006 WL 626921, at *9-10 (D.D.C. Mar. 12, 2006) (describing the split among judges

9

on this Court and collecting cases). Plaintiff urges the Court to adopt the three-year statute of limitations period for personal injury actions, while Defendant argues that the Court should use the period applied to ADA and Title VII claims.[2]

The disagreement about the appropriate limitations period arises from a tension between two sections of the RA. First, the RA explicitly adopts the "*remedies, procedures, and rights* set forth in Title VI of the Civil Rights Act of 1964" ("Title VI") for claims brought under § 504. 29 U.S.C. § 794a(a)(2) (emphasis added). Second, the RA was amended in 1992 to state, "[t]he *standards* used to determine whether [Section 504] has been violated in a complaint alleging employment discrimination shall be the standards applied under title I of the Americans with Disabilities Act." 29 U.S.C. § 794(d) (emphasis added). The question thus hinges on whether or not "standards" includes "powers, remedies, and procedures."

In *Turner v. District of Columbia*, the court adopted the limitations period used in the ADA. 383 F. Supp. 2d 157, 176-77 (D.D.C. 2005). The court in *Turner* assumed that the term

---

[2] Defendant also urges the Court to go even further and apply the District's one-year limitations period for intentional torts or DCHRA claims rather than the three-year period for personal negligence actions, because "plaintiff's claims are more akin to intentional tort or discriminatory claims." Def.'s Mot. at 9. The Court rejects this argument. *See Doe v. Se. Univ.*, 732 F. Supp. 7, 8-9 (D.D.C. 1990) (rejecting the same argument and applying the District's three-year limitations period to an RA claim).

"standards" logically includes the terms "powers," "remedies," and "procedures." *See id.* The court did not address § 794a(a)(2)'s incorporation of Title VI's "remedies, procedures, and rights." *See id.*

In *Stewart*, on the other hand, another judge on this Court adopted the District's three-year limitations period. *Stewart*, 2006 WL 626921, at *11. The court held in that case that the tension between § 794a(a)(2) and § 794(d) can be explained by interpreting § 794(d) as doing "nothing more than incorporat[ing] the ADA's standards of liability." *Id.* at *10. In particular, the *Stewart* court pointed out that the standards adopted in § 794(d) are only adopted for the purpose of determining whether § 504 has been *violated*. *Id.; see also* 29 U.S.C. § 794(d) ("The standards used to determine whether [Section 504] has been violated . . . shall be the standards applied under title I of the [ADA].").

This Court is persuaded by the analysis set forth in *Stewart* and holds that the District's three-year statute of limitations for personal injury claims applies to RA claims. Accordingly, plaintiff's claims under the RA are limited to the period from April 18, 2000 to April 18, 2003. Summary judgment is **DENIED** on this issue.

### iii. DCHRA Claims

11

Defendant argues that plaintiff's claims under the DCHRA are limited to events that occurred between October 11, 2002, and April 11, 2003. Plaintiff has failed to respond to this argument in any of her filings, including those in response to defendant's earlier motions for summary judgment, except to clarify that she sent her notice by fax and mail on or about April 4 rather than April 11, 2003. Because of her failure to respond, plaintiff concedes the point. *See, e.g.*, *Hopkins v. Women's Div., Gen. Bd. Of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion . . . addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). Plaintiff's claims under the DCHRA are therefore limited to the period from October 4, 2002, to April 4, 2003.

**B. Disability Under the ADA, RA, and DCHRA**

Defendant contends that plaintiff is not disabled under the ADA, RA, or DCHRA. Plaintiff notes that this Court decided this issue in March 2007. Defendant filed a motion for summary judgment on August 1, 2006, arguing, *inter alia*, that plaintiff is not disabled under the ADA. On March 26, 2007, this Court denied that ground of defendant's motion and ruled that "plaintiff can demonstrate . . . that she is disabled within the meaning of the ADA and [the RA]." *See Gordon v. District of*

12

*Columbia*, 480 F. Supp. 2d 112, 117 (D.D.C. 2007). In denying defendant's motion, this Court held that there was sufficient evidence, drawing all inferences in plaintiff's favor, to defeat a grant of summary judgment on the issue of plaintiff's disability. Defendant presents no new evidence to alter that conclusion. Therefore, this Court's previous ruling is controlling and summary judgment on this issue must be **DENIED.**

## C. Failure to Accommodate

Defendant contends that plaintiff has not shown that defendant's failure to reasonably accommodate her disability prevented her from performing the essential functions of her job. This Court, however, already decided this issue in its earlier denial of summary judgment noting that defendant misread the ADA. *See id.* at 118. In the present motion for summary judgment, defendant makes exactly the same argument as it presented in its previous motion, presenting no new arguments nor identifying any change of law. This Court's previous ruling is controlling and summary judgment on this issue must be **DENIED.**

## D. Disparate Treatment

To sustain a claim under the ADA, RA, or DCHRA, plaintiff must show that (1) she suffered an adverse employment action (2) because of her disability. *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (ADA); *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C. Cir. 1993) (RA); *Hamilton v. Howard Univ.*, 960

13

A.2d 308, 314 (D.C. 2008) (DCHRA).  Defendant argues that plaintiff cannot prove disparate treatment because she cannot satisfy either element of the *prima facie* case.

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  *Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006).  An adverse action occurs "when an employee 'experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'"  *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002)).

In its motion for summary judgment, defendant addresses only two of plaintiff's claims.[3]  In her OHR/EEOC complaint, plaintiff avers that the District: (1) refused to permit her to return to work since late October 2002, and (2) placed her on absent without leave status in February 2003.  Both complaints fall within the ADA, the RA, and the DCHRA's statutes of limitations. *See supra* Section III.B.

With regard to whether the District refused to permit

---

[3]  Defendant's motion fails to address plaintiff's numerous failure-to-accommodate claims dating from 1999.  *See* Compl. ¶¶ 11-15.

14

plaintiff to return to work, there is a genuine issue of material fact that precludes granting summary judgment. Plaintiff insists that Bridges told her to "sit tight," that he was going to transfer her to another school, and that she was a "liability" because she could not run out of the school if there was a fire. Plaintiff also claims that she made repeated calls to Bridges about her teacher status and about her transfer. Bridges, on the other hand, stated that he expected plaintiff to return, but that she did not. The precise exchange that occurred between plaintiff and Bridges is material because it may be sufficient to sustain a disparate treatment claim. While plaintiff continued to receive paychecks during that time, plaintiff was forced to use sick pay to continue receiving those paychecks.

Being forced to use sick pay is an objective and tangible harm and may therefore constitute an adverse employment action. *See Turner v. Dist. of Columbia*, 383 F. Supp. 2d 157, 178-79 (D.D.C. 2005) (concluding that a genuine issue of material fact existed as to whether plaintiff had suffered an adverse employment action where she alleged that she was denied the use of sick days to which she was qualified); *Washington v. White*, 231 F. Supp. 2d 71, 78 (D.D.C. 2002) ("A leave restriction presumably limits the circumstances under which an employee may take leave that has been earned, and might be considered an adverse personnel action insofar as it restricts plaintiff's

15

ability to take leave to which he would otherwise be entitled."). Moreover, if Bridges forced plaintiff to use her sick pay because her disability was a "liability" to Ballou, then the adverse action was suffered because of plaintiff's disability. Whether plaintiff was placed on AWOL is not an independent claim but a direct result of her claim that the District did not permit her to return to work. Plaintiff would not have been placed on AWOL status had her sick leave not run out, but she alleges her sick leave ran out because she was forced to use it.

Plaintiff can demonstrate that she has suffered disparate treatment on the basis of her disability. Summary judgment on this issue is **DENIED**.

### E. Plaintiff's Cross-Motion for Partial Summary Judgment

In her cross-motion, plaintiff moves for partial summary judgment solely on the ground that she is a qualified individual with a disability under the ADA, RA, and DCHRA. Plaintiff argues that this Court previously decided that she is disabled. This is a misreading of the Court's March 26, 2007 opinion. In the opinion denying summary judgment, this Court found that "*plaintiff can demonstrate* . . . that she is disabled within the meaning of the ADA and Rehabilitation Act." *Gordon*, 480 F. Supp. 2d. at 117 (emphasis added) (footnote omitted). Furthermore, that ruling was based on accepting the non-moving party's (plaintiff's) evidence as true. In the context of the present

16

motion, however, the non-moving party is the defendant. Therefore the decision of the Court on defendant's earlier motion for summary judgment is not dispositive.

More fundamentally, this Court's earlier denial of summary judgment for defendant is irrelevant to plaintiff's current motion because of the different standards of proof to which the parties are held. Indeed, the flaw in plaintiff's reasoning is highlighted by her argument that she is entitled to partial summary judgment because "a reasonable jury could find in her favor" on the issue of her disability. Pl.'s Reply at 5. Although the Court agrees with this assessment, *see Gordon*, 480 F. Supp. 2d. at 115-17, such a conclusion is sufficient only to preclude a grant of summary judgment for defendant, *not* to support a grant of summary judgment in plaintiff's favor. *See Anderson*, 477 U.S. at 251-52 (explaining that the summary judgment standard mirrors that of a directed verdict, and concluding that "the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). Rather, plaintiff is entitled to a finding that she is disabled as a matter of law only if *no* reasonable jury could agree with defendant that she does not have "'a physical or mental impairment that substantially limits one or more major life activities.'" *Gordon*, 480 F. Supp. 2d at 116

(quoting 42 U.S.C. § 12102(2)(A)); *see also Anderson*, 477 U.S. at 252 ("[T]he judge must ask himself . . . whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented."). The Court does not believe that plaintiff has met this burden.

Plaintiff testified that she walks up steps to enter her home and needs to use even more stairs to reach her bedroom on the second level and the laundry room in the basement. *See* Gordon Dep. at 11, 13. Also, prior to 2004, plaintiff regularly walked between her home and the bus stop and between another bus stop and her work. *See id.* at 299-301, 329. Plaintiff also stated, however, that she avoided using stairs as much as possible because traversing them causes her "extreme pain," *see* Gordon Aff. at 1; Gordon Dep. at 16, and that she took significantly longer than the average person to walk down a sidewalk, *see* Gordon Aff. at 3. Based on these facts, the Court concludes that whether – and the extent to which – plaintiff was substantially limited in a major life activity is not a question that the Court can appropriately resolve at this stage. In short, neither party is entitled to judgment as a matter of law on this issue, the resolution of which will be for a jury. Therefore, plaintiff's motion for partial summary judgment is **DENIED**.

**IV. CONCLUSION**

18

Defendant's motion for summary judgment is **GRANTED** with respect to the statutes of limitations under the ADA and the DCHRA and **DENIED** on all other grounds. As a result, plaintiff's ADA claims are limited to the time period of October 18, 2002 to April 18, 2003; plaintiff's RA claims are limited to the time period of April 18, 2000 to April 18, 2003; and plaintiff's DCHRA claims are limited to the time period of October 4, 2002 to April 4, 2003. Moreover, a reasonable jury could find that plaintiff was disabled under the ADA, RA, and DCHRA, and that plaintiff has suffered disparate treatment on the basis of her disability. Given the facts of this case, however, a reasonable jury could also find that plaintiff was *not* disabled. Accordingly, plaintiff's cross-motion for partial summary judgment on the issue of plaintiff's disability is **DENIED.** An appropriate Order accompanies this Memorandum Opinion.


　　　**SO ORDERED.**

**Signed:　Emmet G. Sullivan**
　　　　　**United States District Judge**
　　　　　**March 31, 2009**

19